HAGGAR *v*. TANIS.

1. WORKMEN'S COMPENSATION—INJURY ARISING OUT OF AND IN COURSE OF EMPLOYMENT—RECORD.

The determination as to whether or not an injury to an employee arose "out of and in the course of" employment necessarily rests on the particular facts and circumstances disclosed by the record of the case (2 Comp. Laws 1929, § 8417, as amended by Act No. 245, Pub. Acts 1943).

2. SAME—PROXIMATE CAUSE—OUT OF EMPLOYMENT—DISASSOCIATED RISKS.

To arise "out of" the employment the injury sustained must have a causal connection with the work to be performed; must be one which follows as a natural incident to the employment, be connected with it, and not the result of a risk disassociated therefrom (2 Comp. Laws 1929, § 8417, as amended by Act No. 245, Pub. Acts 1943).

3. SAME—IN COURSE OF EMPLOYMENT.

An injury is received "in the course of" employment, as that term is used in the workmen's compensation act, when it comes while the workman is doing the duty which he is employed to perform (2 Comp. Laws 1929, § 8417, as amended by Act No. 245, Pub. Acts 1943).

4. SAME—PROXIMATE CAUSE—EQUAL EXPOSURE TO HAZARD APART FROM EMPLOYMENT.

Under the test that an injury, to be compensable under the workmen's compensation act, must have arisen out of and in the course of the employment, an injury which cannot fairly be

traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment would not be compensable (2 Comp. Laws 1929, § 8417, as amended by Act No. 245, Pub. Acts 1943).

5. SAME—FIREMAN EN ROUTE FROM EATING PLACE.

Plaintiff, a fireman for owner of three buildings some four blocks apart but all located on the east side of a street, was not entitled to workmen's compensation by reason of such employment for injuries received while returning easterly across such street after eating his evening meal since his injury did not arise out of nor was it in the course of his employment (2 Comp. Laws 1929, § 8417, as amended by Act No. 245, Pub. Acts 1943).

6. SAME—DEVIATION FROM ROUTE—PERSONAL MISSION OF EMPLOYEE.

A deviation, relieving employer of fireman from liability for workmen's compensation for injuries received while on the streets, occurs when route or place which might otherwise have been permissible, is selected to carry out a mission personal to the employee.

Appeal from Department of Labor and Industry. Submitted January 14, 1948. (Docket No. 72, Calendar No. 43,910.) Decided February 16, 1948.

Frank Haggar presented his claim against H. C. Tanis, employer, and Zurich General Accident & Liability Insurance Company, insurer, for compensation for personal injuries alleged to have been sustained while in his employ. Award to plaintiff. Defendants appeal. Reversed.

*Fox & Fox,* for plaintiff.

*Lacey, Scroggie, Lacey & Buchanan* (*William J. Jones,* of counsel), for defendants.

NORTH, J. This is an appeal by defendants, the employer and insurance carrier, from an award of

compensation to plaintiff. The sole question presented is this: Did the injury which plaintiff sustained arise out of and in the course of his employment by defendant Tanis? The facts are not controverted.

Plaintiff, Frank Haggar, was employed by defendant Tanis as a fireman to care for several furnaces located in three separate buildings. Five of these furnaces were located in one of such buildings and one in each of the others. Each of the three buildings· was located on the east side of South Burdick street in the city of Kalamazoo; but it was a distance of four blocks between the most northerly building and the most southerly building, the other being between the two. Plaintiff lived in a room provided for him in one of the buildings, but there was no provision at his rooming quarters for preparation of meals. As to his meals, plaintiff testified: "I always went to the restaurant." His working hours were from 6 or 6:30 a.m. to 9 or 10 p.m. He testified: "The two boilers, I looked at them three times a day; morning, noon and night and the others two hours or oftener if they needed it."

About 5 p.m. on the day of the accident, plaintiff after attending the furnace in the most northerly of the three buildings, located at the northeast corner of South Burdick and South streets, went to a restaurant on South street for lunch. In doing so he crossed from the east side to the west side of South Burdick street and proceeded west on the north side of South street about half a block to the Park Cafe where he ate his lunch. In returning to his work he walked east on the north side of South street to the northwest corner of the two mentioned streets. He then crossed South street on the west side of South Burdick, and waited on the west side of that street at the southwest corner of the inter-

section for the green light. He then started to cross South Burdick street where the accident happened, resulting in seriously injuring plaintiff. He testified as follows:

"It happened between 5:30 and 6 o'clock at night. * * * I was about midway of the street. * * * There were two cars came from the east and made a left turn and headed me off and I stopped there and was going to turn and go back to the curb and I got struck as I was turning around to look if there was another car. * * * I was going back to the Cedar Dwellings (one of the three buildings) * * * to close the draft on the furnace and check up on the other fires."

In contending that his injury arose out of and in the course of his employment, plaintiff cites and relies upon the following cases: *Kunze* v. *Detroit Shade Tree Co.,* 192 Mich. 435 (L. R. A. 1917A 252); *Haller* v. *City of Lansing,* 195 Mich. 753 (L. R. A. 1917E, 324); *Favorite* v. *Kalamazoo State Hospital,* 238 Mich. 566; *Morse* v. *Railroad Co.,* 251 Mich. 309; and *Schlickenmayer* v. *City of Highland Park,* 253 Mich. 265. Each of the above cases is distinguishable from the instant case because decision therein hinged upon a finding of one or the other of the following attendant circumstances:

(1) That, if the injury occurred on the street, the employee at the time of the injury was found to have been actually engaged in performing duties incident to his employment.

(2) Or that the injury occurred *on the employer's premises* over which he had control and while the employee was engaged in conduct which had the express or implied approval of the employer, and which conduct had at least an indirect connection with the employment, even though the employee was attending his personal wants or needs.

Plaintiff also relies upon *Thiede* v. *G. D. Searle &
Co.,* 278 Mich. 108. But that case is distinguishable
from the instant case because it was therein found
that the employee, a traveling salesman, who lost
his life in a hotel fire, in staying at the hotel " 'did
the usual and natural thing in the course of his em-
ployment;' " and further, the employer " 'expected
and required its employees to stop at hotels.' " In
other words, the plaintiff in that case in staying at
the hotel when the fire occurred was doing some-
thing contemplated and required by his employment.

Plaintiff also calls our attention to two cases from
other jurisdictions, but we do not find in them au-
thority in support of the award in the instant case.
In *Goetz* v. *J. D. Carson Co.,* 357 Mo. — (206 S. W.
[2d] 530), the employee, to whose dependents com-
pensation was awarded, as he was leaving a place
into which he had gone for a soda, sprained his
ankle, from which a pulmonary embolism developed
causing his death. His employment was that of col-
lecting accounts for the defendant, and in the dis-
charge of his duties the employee went on foot
throughout a large area in the city of St. Louis.
Obviously at the time and place of his injury this
employee, as in *Kunze* v. *Detroit Shade Tree Co.,
supra,* had not departed from the ambit of his em-
ployment. Such is not the fact in the instant case.
And it may be noted that in its opinion in the *Goetz
Case,* the Supreme Court of Missouri said: "It is
indeed a close question whether there is evidence
sufficient upon which it can be reasonably deter-
mined the deceased was injured by accident in the
course of his employment."

In the other case from a foreign jurisdiction upon
which plaintiff relies, *Cardillo* v. *Hartford Accident
& Indemnity Co.* (C. C. A.), 109 Fed. (2d) 674, the
employee was the driver of a sight-seeing vehicle

in and about Washington, D. C. For the purpose of getting his noon-day lunch he drove the vehicle about two miles from the point where otherwise he would have been waiting for passengers whom he was sent to pick up. On his return to the place where he was to take on the passengers his vehicle overturned and the employee was injured, and he was awarded compensation. But the opinion of the court fairly discloses that plaintiff and other fellow employees commonly drove their vehicles to places where they ate their meals, and this was done with employer's consent. The employing company's president and manager testified:

"*Q.* Is it in violation of the company's rules for one of your drivers to use the car in going a short distance for his lunch?

"*A.* Well, now, not while he is on a job like that; I would say that there is nothing against it.

"*Q.* For instance, if one of your drivers drops a party of passengers at the Congressional Library, he would not be compelled to take the most direct route back to the Commodore Hotel, but he could take any other route that he wanted to, a few blocks one way or the other?

."*A.* That would be all right; yes."

There is no comparable testimony in the instant case. Referring to the quoted testimony, the court said: "The manager's testimony would support a finding that Green Line (the employer) and its drivers understood that a man did not abandon or interrupt his employment by driving a reasonable distance to get lunch." The controlling factual distinction between the *Cardillo Case* and the instant case is obvious.

Decision herein is controlled by cases wherein, under comparable circumstances, we have held that the injury did not arise out of and in the course

of the employment.* Incident to this phase of the law we have held:

"The determination as to whether or not an injury to an employee arose 'out of and in the course of' employment necessarily rests on the particular facts and circumstances disclosed by the record of the case.

"To arise 'out of' the employment the injury sustained must have a causal connection with the work to be performed; must be one which follows as a natural incident to the employment, be connected with it, and not the result of a risk disassociated therefrom.

"An injury is received 'in the course of' employment, as that term is used in the workmen's compensation act, when it comes while the workman is doing the duty which he is employed to perform.

"Under the test that an injury, to be compensable under the workmen's compensation act, must have arisen out of and in the course of the employment, an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment would not be compensable." *Murphy v. Flint Board of Education* (syllabi), 314 Mich. 226.

The applicability of our holdings in the *Murphy Case* to the facts under consideration in this case is apparent from the following. Each of the three buildings in which plaintiff rendered service was located on the east side of South Burdick street. In doing his work plaintiff at no time had occasion for crossing South Burdick street or for entering upon the portion of that street which was used by its vehicular traffic. In so doing plaintiff departed

---

* See 2 Comp. Laws 1929, § 8417, as amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8417, Stat. Ann. 1947 Cum. Supp. § 17.151).—Reporter.

from the ambit of his employment, entered upon a course of action disassociated from his work, and was doing that which was solely incident to his personal desires or needs. While he was so acting his employer was not charged with the risk of plaintiff incurring injury, because such an injury could not be said to have arisen out of and in the course of his employment. From the time of plaintiff's departure from his area of work on the east side of South Burdick street, he was not acting in the course of his employment. His mission was personal and at the time of the accident he had not returned to a place where his work required him to be. And there was no "causal connection" between his work and the accident. In its legal aspect the situation is no different than it would have been if plaintiff had left his place of employment and gone a greater distance for his evening meal.

We are not in accord with the reasoning or holding of the commission as indicated by the following in its opinion:

"Did he step out of his employment at the time he went to the Park Cafe to eat? If so, when did he return to his employment? It may be that he was not in the course of his employment when he was in the Cafe eating.  *  *  *  In our opinion, it would not be necessary for him to cross to the east side of Burdick street and actually be on that side of the street in order to be in the course of his employment."

The department's opinion just noted is contrary to our holdings. In *Dent* v. *Ford Motor Co.*, 275 Mich. 39, the employee was only five feet outside the employer's exit gate when injured; and in *Simpson* v. *Lee & Cady*, 294 Mich. 460, the employee, on his way to work, had approached within inches

of his place of employment when he was injured. In each of these cases compensation was denied on the ground that the injury did not occur while the employee was within the ambit of his employment and hence it could not be said that his injury arose out of and in the course of his employment.

We said in *Conklin* v. *Industrial Transport, Inc.*, 312 Mich. 250, 255:

"The slight deviation from the usual route over highway 127 is not the controlling factor, but rather the fact that deceased made this deviation for the sole purpose of carrying out a personal mission. In other words, the deviation had no connection with the business of the employer, but was made for the pleasure of deceased. He had departed from the scope of his employment and at the time and place of his accident was engaged in a pleasure trip to visit his friend, Burch."

And in the same case we quoted from *Jeffries* v. *Jodawelky*, 304 Mich. 421, 424, the following:

" 'A deviation occurs when a route (or place), which might otherwise have been permissible, is selected, to carry out a mission personal to the employee.' "

In a legal sense the following cases are much in the field of the instant case, and are in accord with our holding herein. *Lipinski* v. *Sutton Sales Co.*, 220 Mich. 647; *Furino* v. *City of Lansing*, 293 Mich. 211; *Cherewick* v. *Laramie & Son, Inc.*, 295 Mich. 570; *Rucker* v. *Michigan Smelting & Refining Co.*, 300 Mich. 668; *Meehan* v. *Marion Manor Apartments*, 305 Mich. 262; and *Rector* v. *Ragnar-Benson, Inc.*, 313 Mich. 277.

Our review of this record brings the conclusion that plaintiff under the uncontradicted proof did not

sustain an injury which arose out of and in the course of his employment by defendant Tanis. The award is vacated, with costs to appellant.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, DETH-MERS, BUTZEL, and CARR, JJ., concurred.