354 P.2d 526

Lynn H. FAUTHEREE, Claimant-Appellant,

v.

INSULATION & SPECIALTIES, INC., Employer, Maryland Casualty Company, Insurer, Defendants-Appellees.

No. 6640.

Supreme Court of New Mexico.

June 15, 1960.

Walter K. Martinez and John V. Coan, Grants, for appellant.

Rodey, Dickason, Sloan, Akin & Robb, by John P. Eastham, Albuquerque, for appellees.

JOHN R. BRAND, District Judge.

This appeal is from the dismissal of appellant's claim under the Workmen's Compensation Act, 1953 Comp. § 59–10–1 et seq.

Claimant was employed as an installer of insulating material for defendant Insulation & Specialties, Inc., a subcontractor engaged in a part of the construction of an uranium processing mill for Phillips Petroleum Company located in the Ambrosia Lake area near Grants. The entire job site was fenced in and the only entrance was through a gate guarded by employees of another corporation, Safeguard System. All persons having business inside the fence were supplied with identification badges, or passes, to be checked by the gate guard before admission.

On the date of his injury, claimant worked until noon and, on leaving the job, told his foreman that he was bothered with a toothache and would not return for work that afternoon. On going to his home, however, he and his wife decided that they would drive into Albuquerque and, needing money for the trip, he returned to the job site in order to obtain an advance on his wages, a practice permitted by his employer. He arrived at the entrance about 4:00 p. m. and an altercation arose between

him and the guard at the gate because he at first attempted to go inside without showing his identification badge. After some heated argument, he went to his car, got his badge and showed it to the guard who still refused to let him pass in with the remark, "You are so smart, I ain't going to let you in anyhow." Claimant retorted that he, the guard, might keep him out of the plant, but he would stay there until they came out at 4:15 and then get his check, whereupon the guard drew his gun and shot claimant in the leg. It is for this injury that the claim for compensation was filed.

No sufficient excuse for this violent assault appears in the deposition. Claimant was unarmed and standing near his automobile about thirty feet from the guard when the shot was fired. He intended to wait there until his paymaster arrived from within the fenced area. He admitted that he had been drinking beer during the time he was away and was angry because the guard had on previous occasions let him through the gate without demanding identification.

The court, after a hearing on the legal defenses raised by defendant, dismissed the claim for the reason that:

"Claimant did not suffer an injury by accident arising out of and in the course of his employment while working for Insulation & Specialities, Inc."

As grounds for reversal, appellant contends that the injury was caused by accident arising out of and in the course of his employment, and asserts that an injury is compensable if it is reasonably incident to the employment or flows therefrom as a natural consequence; that it must be on account of a risk peculiar to the employment, as distinguished from a risk common to the general public. He then argues that here employees had of necessity to go through the gate to get to the place of work and that each time they passed through the guarded entrance they were exposed to the risk of injury by a guard armed with a deadly weapon; that this risk was not common to the public but was an incident to the employment. He also urges that since claimant's purpose in returning to the job site was to collect wages, he was doing something incidental to his employment contract; that the accident and injury suffered by him in so doing constitutes an accident occurring in the course of employment. He cites in support of his claim, McKinney v. Dorlac, 1944, 48 N.M. 149, 146 P.2d 867; Walker v. Woldridge, 1954, 58 N.M. 183, 268 P.2d 579, and Martinez v. Fidel, 1956, 61 N.M. 6, 293 P.2d 654.

In McKinney v. Dorlac, claimant had been working in Albuquerque and was ordered by his employer to move to Roswell to work there as a foreman. While making the trip he was fatally injured in an automobile accident. He was receiving regular

wages while enroute, and it was held (two Justices dissenting) that the accident arose in the course of his employment and was compensable.

In Walker v. Woldridge, claimant was a filling station employee, who, while servicing the automobile of a deputy sheriff, discovered a tear-gas gun in the car. He picked it up and pressed the trigger, discharging the gun into his face which caused injury to his eyes. He had been warned not to disturb anything in the automobile. Compensation was not allowed, because the injuries occurred due to a violation of his employer's instructions.

In Martinez v. Fidel, claimant had fallen on ice after passing, on an optional route, down an alley to the street after leaving her place of work. It was held that injury resulted from a hazard not peculiar to her employment and not arising out of it; that no recovery could be allowed under the Workmen's Compensation Act.

It is evident that none of these cases is in point. Appellant asserts that in them the Court defines "Course of employment" so as to bring the instant case within those definitions, but we fail to see how they aid his cause. What he says is an "analogous question" was considered in Jaynes v. Potlatch Forests, 1954, 75 Idaho 297, 271 P.2d 1016, 50 A.L.R.2d 356. Quoting from the brief, he states:

"In that case compensation under the Workmen's Compensation Law was sought for the death of an employee resulting from a collision at a railroad crossing. The employee, upon completion of his day's work, left the employer's premises on a public highway to cross a heavily travelled railroad track immediately adjacent to the premises. Practically all the employees used the crossing in question in coming to and going from work, which use was known to and contemplated by the employer, and the employer's watchmen ordinarily on duty to protect the employees were not present at the time due to a plant shutdown. An order denying compensation was reversed by the Supreme Court of Idaho, which held that the injury occurred at a point where the employee was within range of dangers peculiarly associated with the employment, and hence arose out of and in the course of employment. Therein the Court stated:

"'A vast majority of the State Courts, as well as the United States Supreme Court, have consistently declared and adhered to the doctrine that where an employee has been subjected to a peculiar risk, such as crossing railroad tracks under such facts and circumstances as hereinbefore detailed, there is such an obvious causal relation between the work and the hazard that the course of employment concept must be expanded to cover such employees, oth-

erwise an injustice in the denial of compensation for an injury caused by the employment would result. It is a recognition of the causal connection between the conditions under which an employee must approach and leave the premises of the employer, and the occurrence of the injury; it recognizes that employment involves peculiar and abnormal exposure to a common peril, which annexes itself as a risk incident to and inseparable from the employment; it is not necessarily based upon nearness to the plant nor upon reasonable distance therefrom or even identifying the surrounding area as an integral part of the premises for all practical purposes but upon a causal relationship between the work and the hazard.'

"Later in its opinion the Court went on to say:

" 'There seems to be no rational reason to conclude that an employee is not covered if he is injured while going to his work or returning home from his work from a risk or hazard of an (sic) inherent in the employment itself, and it is obviously immaterial if such be so upon whose premises the accident occurred, for in either event he is within both the letter and the spirit of the Act. Even in Arizona, where a strict and somewhat narrow interpretation of the law has been applied, it was recognized in the case of McCampbell v. Benevolent & Protective Order of Elks, 71 Arizona 244, 26 [226] P.2d 147, that compensation would not, in all cases, be denied for off-premises injuries while going to and coming from work. It recognized instances where risk or danger, inherent in and inseparable from the employement, create a special hazard to which the employee is required to subject himself, such as having to cross a railroad crossing.' "

Defendants answer this argument by several points to the effect that one is not injured while acting within the course of his employment, as contemplated by the Act, if he has ceased work for the day and left his employer's premises but later returns for personal reasons and is injured; if he is injured while on the way to assume the duties of his employment; or if he has quit work and left the premises but later returns for the sole purpose of collecting pay on a day other than his regular pay day. As to the assertion that one injured while attempting to get his pay is acting within the course of his employment, defendants point out that claimant had abandoned his efforts to get into the premises for this purpose, and was waiting outside until the paymaster arrived from within the fence when he was shot.

A New Mexico decision cited by defendants supports their views as to the first point shown above. In Olguin v. Thygesen,

1943, 47 N.M. 377, 143 P.2d 585, 590, the employer was engaged in the construction and repair of a state highway. Plaintiff was employed to place flares before dark along stretches of the road which were being torn up and patched, and having completed this work was off duty until the next morning. His injury occurred when he ran into one of the employer's unlighted machines parked on the highway at about 11:00 p. m. while he was performing a personal errand in taking another employee to work. The accident happened some distance from where his employment required him to set out the flares, although on a portion of the highway over which his employer had control and on the site of employer's operations. The Court held that the action was properly brought at law for damages, and that the injury was not compensable under the Workmen's Compensation Law since the workman was not at the time of injury working on or about "premises occupied, used or controlled by employer" or in any "place where his employer's business required his presence" within the Act.

In Davis v. Bennett, D.C.1953, 114 F.Supp. 790, plaintiff brought an action at law for assault and battery. Defendant, his employer, had told plaintiff by telephone that he was discharged from his job as driver of a garbage truck. Plaintiff asked for his wages and was told that the check would be delivered later. He then went to defendant's office to get his clothes and again asked about payment of his wages but started to leave due to defendant's menacing attitude, when he was assaulted by the defendant. Defendant filed a motion for summary judgment on the ground that the complaint was one under the Workmen's Compensation Act. The court held that although the injury occurred on employer's premises, it was not sustained by accident arising out of and in the course of the employment, and that the compensation act did not apply, stating that under the circumstances "he was not performing any service as a truck driver and there was no controversy between him and defendant about his compensation. He had accepted the proposal of the defendant and was departing when he says he was assaulted."

Two cases involving injuries sustained while engaged in attempting to collect wages are cited, in each of which the employee had been instructed to return for his pay at a particular time. In Forman v. Chrysler Corp., 1936, 102 Ind.App. 408, 2 N.E.2d 806, the employee had been discharged, checked out his tools and told to return the next day for his pay. He was injured the next day while enroute to the plant to collect his pay, about one block away, while riding a motorcycle which collided with an automobile. The court held that the injury did not arise in the course of his employment, since when he left the factory without being paid, the only rela-

tionship remaining between him and the employer was that of creditor and debtor. In Kelly v. Dixie Fuel & Supply Co., 1951, 329 Mich. 466, 45 N.W.2d 356, 358, the employee's job terminated on February 4 at quitting time. The next day he returned and went to the payroll office to collect the wages due and, while waiting there, fell downstairs and received injuries. The court stated that the fact that he was on the employer's premises was not controlling, and,

"As applied to the instant case it is quite impossible to conclude that plaintiff was performing any service for his employer, or performing any duty in furtherance of his employer's business when, after he had been discharged from his employment on the previous day, he returned to the employer's premises for the sole purpose of collecting his pay. In Haggar v. Tanis (syllabus), 320 Mich. 295, 30 N.W.2d 876, we held: 'An injury is received "in the course of" employment, as that term is used in the workmen's compensation act, when it comes while the workman is doing the duty which he is employed to perform.' "

In his reply brief, appellant quotes from "The Law of Workmen's Compensation" by Larson, Vol. 1, p. 295, at 393, et seq. A number of cases are cited by the author involving claims because of injuries sustained in connection with collection of pay by workmen. The text contains these statements:

"§ 26.00 Injuries incurred by an employee while leaving the premises, collecting pay, or getting his clothes or tools within a reasonable time after termination of the employment are within the course of employment, since they are normal incidents of the employment relation. * * *

"§ 26.30 * * * Most *contra* cases in this field are based on the same factor as those involving departure from the premises: undue delay * * *.

* * * * * *

"Once you have identified the collection of pay as a work-connected activity, it should logically follow that the normal course of employment limitations applicable to any work activity should apply. *Thus, an injury occurring while the claimant is on his way to the plant to collect his pay, but still off the premises, is outside the course of employment;* for there is no reason to place the discharged worker about to collect pay in a stronger position than that afforded to the worker on his way to the actual performance of the duties of his employment." (Emphasis supplied.)

Our compensation law provides:

" * * * injuries to workmen, * * shall not include injuries to any work-

man occurring while on his way to assume the duties of his employment or after leaving such duties, * * *." § 59–10–12(j) (6) (III), (l).

If it be conceded, as claimant asserts, that his action in returning to the job site for the purpose of drawing advance pay was a "normal incident of the employment relation," his injury also occurred "while he was on his way to assume" the duty of his employment and hence the claim for compensation is barred by the section quoted above. He never arrived at the place where he had intended to collect the pay, but due to a personal controversy with the guard, abandoned the attempt to enter the plant. The injury received may be said to have arisen out of his employment but was not sustained in the course of his employment; what he had planned to do in returning to the site was for his personal benefit alone and not designed to be of service to his employer or to further the employer's business. There was no hazard connected with the necessity of entering through a gate controlled by an armed guard, which he contends was a risk of injury not common to the public, but an incident of the employment. Had he been on his way to work, instead of on a personal errand, there was no reason to anticipate injury occurring had he complied with his instructions by showing his badge at the entrance.

There is nothing in the testimony which indicates that the quarrel with the guard arose because of his attempt to collect pay —the injury to him was the direct result of personal animosity between the two actors, even though its violent end could not have been reasonably expected. The injury he sustained is no more compensable under the Act than would be one received because of a personal encounter with a stranger at some point enroute from his home to the job site.

The trial court properly dismissed the claim. The judgment is affirmed, and,

It is so ordered.

COMPTON, CARMODY, MOISE and CHAVEZ, JJ., concur.