CONKLIN *v.* INDUSTRIAL TRANSPORT, INC.

1. WORKMEN'S COMPENSATION—SCOPE OF EMPLOYMENT—TRUCK DRIVER—DEVIATION FROM ROUTE ON PERSONAL PLEASURE.

Where deceased truck driver was fatally injured while making a slight deviation for the purely personal pleasure of visiting with a friend while returning truck to terminal after delivering cargo, dependents were not entitled to recover workmen's compensation since the deceased was not acting within the scope of his employment and the injuries did not arise out of and in the course of his employment (2 Comp. Laws 1929, § 8417, as amended by Act No. 245, Pub. Acts 1943).

2. SAME—ACCIDENTS OUT OF AND IN COURSE OF EMPLOYMENT.

An accident, to be compensable, must be one arising "out of" as well as "in the course of" the employment.

3. SAME—ACCIDENTS—PROXIMATE CAUSE.

To arise "out of" the employment the injury sustained must have a causal connection with the work to be performed; must be one which follows as a natural incident to the employment, be connected with it, and not be the result of a risk disassociated therefrom (2 Comp. Laws 1929, § 8417, as amended by Act No. 245, Pub. Acts 1943).

4. SAME—DEVIATION FROM BUSINESS OF MASTER.

The deviation or departure from the business of the master is the important issue in determining his liability for payment of workmen's compensation for accidental injuries, claimed to have been suffered while employee was not engaged in the employment, not the geographical deviation from a prescribed or feasible route, as the deviation from the route arises as an incident to the departure by the employee from the scope of his employment.

5. SAME—DEVIATION FOR MISSION PERSONAL TO EMPLOYEE.

A deviation relieving an employer from liability for workmen's compensation occurs when a route, which might otherwise have been permissible, is selected to carry out a mission personal to the employee.

6. SAME—FAILURE TO SPECIFY ROUTE—DEVIATION FOR PERSONAL USE.
   The failure of the employer to specify a particular route does
   not of itself permit a personal use of the vehicle, and unless
   consent can be implied from some other source, such use is a
   deviation and the employer is relieved from liability for work-
   men's compensation for fatal injuries sustained by employee
   while making such personal use of the vehicle.

Appeal from Department of Labor and Industry. Submitted June 6, 1945. (Docket No. 30, Calendar No. 42,995.) Decided October 8, 1945.

Grace E. Conklin presented her claim for compensation against Industrial Transport, Inc., employer, and State Accident Fund, insurer, for death of her husband alleged to have occurred as result of an accident arising out of and in the course of his employment. Award to plaintiff. Defendants appeal. Reversed and award vacated.

*Richardson & Burwell,* for plaintiff.

*Harry F. Briggs (Roy Andrus,* of counsel), for defendants.

STARR, C. J. Plaintiff Grace Conklin is the widow, and other plaintiffs are the minor children, of V. Reynold Conklin, who was fatally injured in an automobile accident on April 2, 1944. The deceased and his brother, Lloyd Conklin, were both employed as truck drivers by defendant transport company. On Saturday, April 1st, the brothers, each driving a truck loaded with military equipment, left the terminal of the transport company in Lansing, their destination being the Erie proving grounds near Toledo, Ohio. They followed the route of highway No. 127 to Jackson, Nos. 50 and 52

to Adrian, No. 56 to Toledo, and highway No. 2 from there to the proving grounds. They arrived at their destination early Sunday morning, their trucks were unloaded, and they started on the return trip to Lansing over the same route. On the way they decided to visit their friend, Ben Burch, who lived on a farm on Tuttle road near Mason, about a mile from highway 127. When they reached the intersection of Tomlinson road and highway 127, Sunday afternoon, they turned west on Tomlinson and proceeded one mile to Tuttle road. They then turned north on Tuttle and had gone about half a mile, when the brother, Lloyd, who was ahead, saw their friend Burch beside the road and stopped his truck. The truck driven by deceased crashed into the rear of Lloyd's truck, and deceased sustained injuries resulting in his death a few days later.

Plaintiff Grace Conklin filed application for adjustment of claim. Defendants answered, contending that the deceased's injuries did not arise out of and in the course of his employment. The matter was heard before a deputy commissioner, who denied compensation. On review the department reversed the deputy and awarded compensation to plaintiffs for total dependency. Having obtained leave, defendants appeal.

Defendants claim that decedent's deviation from his regular route to visit his friend, Burch, was not within the scope of his employment, and that his fatal injuries while on such deviation did not arise out of and in the course of his employment. The brother, Lloyd, testified that on 10 to 15 previous round trips to the Erie proving grounds they had followed highway 127 between Lansing and Jackson, except that in some instances, when near or en-

tering Lansing, they had turned off to stop at an eating place. He said that they were paid on a mileage basis, but the record does not show the route or distance used by the company in computing the mileage. He further testified:

"*Q.* Now when you got to the Erie proving grounds and unloaded your load, what was your job then?

"*A.* My job was to get our trucks back to Lansing to the Industrial Transport Company terminal.
* * *

"*Q.* Were you given any directions as to the return route to Lansing?

"*A.* No. * * *

"*Q.* Was there any specific time in which you were to return that truck to the Industrial Transport Company terminal in Lansing?

"*A.* No. * * *

"*Q.* On your return route, you came back the same general way?

"*A.* Yes.

"*Q.* * * * Had you ever left any of those highways on your return trip?

"*A.* No. * * *

"*Q.* * * * Now when you turned off U. S. 127 what was your purpose?

"*A.* To visit Ben Burch. * * *

"I remember of asking that we go * * * and see Ben, and my brother agreed to do it. * * *

"*Q.* And what occurred * * * after you had proceeded a half-mile on Tuttle road?

"*A.* Well, I did not recognize Ben's place and went by the place. He stood by the road and * * * as I went by he called to me and I stopped. * * *

"*Q.* Then what happened?

"*A.* Well, as to that I can not say except there was a crash. * * *

"*Q.* And what did you find?

"*A.* Found my brother smashed, the truck smashed and him in it. * * *

"*Q.* Now when you * * * turned off 127 one mile to the north (west) and one-half mile to the west (north), were you or were you not traveling in the general direction of Lansing and the terminal of the Industrial Transport Company?

"*A.* That is right. * * *

"*Q.* Did you at the time decide what route you were going to follow from Ben Burch's across to the terminal in Lansing?

"*A.* No. * * *

"*Q.* That is the only reason you turned off at Tomlinson road, to go and see Ben Burch? * * *

"*A.* That is right. * * *

"*Q.* Were you ever told that you could not drive off that route?

"*A.* No. * * *

"*Q.* Did you have any business for the employer that would take you over to Ben Burch's place on this Sunday?

"*A.* No."

There was testimony indicating that the routes which the brothers could have taken to the transport company's terminal in Lansing, by way of the Burch farm, were from 2 to 4½ miles longer than their regular route, by way of highway 127. In its opinion awarding compensation the department said:

"The employer had definitely not specified a particular route over which the trip was to be made; neither had the employer designated any certain time that the trucks should be returned to its terminal at Lansing. * * * There was no need for haste. * * * At the time of the injury the boys were driving in a northwesterly direction. That was in the direction of the employer's terminal. * * * In choosing the route of travel, which undoubtedly they were permitted to do, they could have chosen any one of several good roads leading

from the vicinity of Mason to Lansing.   *   *   *

"By failure to specify a particular route it would seem the employer impliedly consented that the deceased and his brother could select any feasible route. Under such circumstances there would be no deviation even though the shortest route of travel was not selected.   *   *   *   He had only one duty to perform, that is, to bring the empty truck to the Lansing terminal. It was while he was engaged in the performance of that task that the accident occurred.

"We find that deceased was in the course of his employment when the accident occurred, and further the accident which caused the fatal injuries arose out of his employment."

We cannot agree with the department's conclusion. The slight deviation from the usual route over highway 127 is not the controlling factor, but rather the fact that deceased made this deviation for the sole purpose of carrying out a personal mission. In other words, the deviation had no connection with the business of the employer, but was made for the pleasure of deceased. He had departed from the scope of his employment and at the time and place of his accident was engaged in a pleasure trip to visit his friend, Burch. We find no competent and substantial testimony supporting the finding of the department that deceased was acting within the scope of his employment. In the case of *Meehan* v. *Marion Manor Apartments,* 305 Mich. 262, we said:

"An accident, to be compensable, must be one arising 'out of' as well as 'in the course of' the employment. *Appleford* v. *Kimmel,* 297 Mich. 8. To arise 'out of' the employment the injury sustained must have a causal connection with the work to be performed; it must be one which follows as a natural incident to the employment, be connected with it, and not the result of a risk disassociated there-

from.   See *Appleford* v. *Kimmel, supra; Dent* v. *Ford Motor Co.*, 275 Mich. 39; *Rucker* v. *Michigan Smelting & Refining Co.*, 300 Mich. 668.''

The present case is controlled by our decision in *Jeffries* v. *Jodawelky*, 304 Mich. 421, in which we said:

"If it be assumed that the route Jodawelky intended to take was feasible, though not the shortest, such facts would not fasten liability on the employer *if the employee had departed from the scope of his employment and was engaged on business personal to himself.* * * *

"The deviation or departure from the business of the master is the important issue, as we pointed out in *Irwin* v. *Williamson Candy Co.*, 268 Mich. 100, not the geographical deviation from a prescribed or 'feasible' route, as the deviation from the route arises as an incident to the departure by the servant from the scope of his employment. *A deviation occurs when a route, which might otherwise have been permissible, is selected to carry out a mission personal to the employee.*

"Jodawelky testified positively that when he turned west on McGraw it was for the sole purpose of visiting the girl.  If true, he was not engaged in his employer's business at the time the accident occurred and the employer would be relieved of liability for the resulting injury.''

In the case of *Foote* v. *Huelster*, 272 Mich. 194, we said:

"A servant may deviate somewhat from the direct route without releasing his employer from liability but, if he turns aside from the business or errand of his master to engage in some purpose of his own or, as in the case at bar, to accommodate a friend, it is more than a mere deviation and severs the relation essential to fasten liability upon his master for his negligence.''

In *Kieszkowski* v. *Odlewany,* 280 Mich. 388, 393, we said:

"Failure to specify a particular route does not, of itself, permit a personal use of the vehicle, and unless consent can be implied from some other source, such use is a deviation."

See, also, *Horvath* v. *Finest Products Co.,* 270 Mich. 352; *Irwin* v. *Williamson Candy Co.,* 268 Mich. 100; *Nevins* v. *Roach,* 249 Mich. 311; *Drobnicki* v. *Packard Motor Car Co.,* 212 Mich. 133; *Brinkman* v. *Zuckerman,* 192 Mich. 624.

Our decision in *Heatherly* v. *Tri-State Motor Express,* 304 Mich. 303, is readily distinguishable from the instant case, because in that case a deviation of not to exceed three miles from the specified route was allowed by the public service commission, and there was no showing that the deceased driver was on a personal mission or business of his own.

We conclude, as a matter of law, that the deceased's fatal injuries did not arise out of and in the course of his employment.* The award of the department is vacated, with costs to defendants.

NORTH, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred. The late Justice WIEST took no part in the decision of this case.

---

* See 2 Comp. Laws 1929, § 8417, as amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1943, § 8417, Stat. Ann. 1943 Cum. Supp. § 17.151).—REPORTER.