WEERSING *v.* AIRSEAL INSULATING &
ROOFING COMPANY.

WORKMEN'S COMPENSATION—ROOFING SALESMAN—DEVIATION FROM
DIRECT LINE OF TRAVEL—ACCIDENT—IN COURSE OF EMPLOYMENT.
Roofing salesman who worked on a commission basis did not
suffer injury in the course of his employment, where high-
way accident occurred en route to an eating place and while
he was away from direct line of travel between last place he
had called and next place he was to stop on business of the
employer.

ADAMS and BUSHNELL, JJ., dissenting.

Appeal from Workmen's Compensation Commis-
sion. Submitted June 9, 1953. (Docket No. 37, Cal-
endar No. 45,843.) Decided December 29, 1953.

James Weersing presented his claim for work-
men's compensation against Airseal Insulating &
Roofing Company, employer, and Auto-Owners In-
surance Company, insurer. Award to plaintiff. De-
fendants appeal. Reversed.

*Waalkes, Wierenga & Sevensma,* for plaintiff.

*Alexander, Cholette, Buchanan, Perkins & Conk-
lin (Edward D. Wells,* of counsel), for defendants.

REFERENCES FOR POINTS IN HEADNOTES
58 Am Jur, Workmen's Compensation §§ 222–228.
Injury to solicitor, collector, or outside salesman as arising out of
and in the course of the employment. 29 ALR 120; 36 ALR
474.
Death or injury in course of traveling. 20 ALR 319; 49 ALR
454; 63 ALR 469; 100 ALR 1053.
Injury to employee while going to or from work during lunch
hour. 141 ALR 862.

REID, J.   Defendants appeal from an award by the workmen's compensation commission for personal injuries received by plaintiff in an automobile accident, at the time of which accident plaintiff claims he was in the employ of the defendant company (hereinafter referred to as defendant) and engaged in the business of the defendant.

Plaintiff had sold to his son the business of the defendant company and thereafter worked for defendant as the only salesman for the business. Plaintiff owned his own car and received no allowance for expenses in using his car. Plaintiff worked on a strict commission basis of 15 and 20%. He ordinarily worked 5 days a week.

On Friday evening, September 29, 1950, plaintiff's son came to plaintiff's house and said that he, the son, was going the next day to Ann Arbor and asked plaintiff to go on certain jobs on Saturday, September 30th.   He gave plaintiff 2 cards, that is, the designation of 2 prospects to call on in Grandville, after which he was to go to a prospect at Jenison, and then to go to Black Lake at Holland where the defendant had started a job; plaintiff took along in the trunk of his car some more shingles for that job. The son told plaintiff after delivering the shingles to go to Mrs. Vanden Beldt's cottage at Cardou Beach to pick up some roofing felt if any had been left in the garage there, which was the termination of the directions given by the son to plaintiff for the day's activities, September 30th.

On Saturday, September 30th, after having had lunch at home, plaintiff accompanied by his wife left Grand Rapids and made 2 stops at Grandville. Neither of the 2 prospects were at home.   Proceeding from Grandville on M-21, they stopped at Jenison where he made a call, then drove on M-21 to Holland, and made the call at the Black Lake job.   Then plaintiff and his wife drove over to the cottage at Cardou

Beach, where plaintiff looked in and around the garage for a roll of felt roofing which he did not find.

After completing the stop at Cardou Beach, if the plaintiff and his wife by their conversation had not changed plaintiff's plans, plaintiff would then have returned by M–21 to Grandville to call again on the 2 prospects whom he had not found there earlier in the afternoon, but instead, plaintiff and his wife discussed having dinner; it was late in the afternoon and plaintiff's wife wanted to have a chicken dinner at the Holiday Inn at Pottawatamie, which is just east of Grand Haven and a distance of 18 miles north and east of the cottage at Cardou Beach. They left on the road for Pottawatamie and having traveled north 3 miles, plaintiff and his wife changed their minds about going to Pottawatamie. Plaintiff said: "You don't want chicken dinner; let's go and get a steak dinner at the Hub at Zeeland." He reminded his wife that he had obtained a chicken and they could have that the next day, Sunday, for their Sunday dinner. Accordingly, they again changed their plan and took a road which they had not before contemplated, and the accident happened on that road before they had reached M–21 on which, but for the accident, plaintiff would have resumed the course of his employment and gone to Grandville.

The workmen's compensation commission in making its award, among other things stated:

"His [plaintiff's] travel sometimes kept him on the road at meal times, and getting something to eat on those occasions was a necessary incident thereto. His work did not confine him to any particular route nor to any particular eating place."

The commission also considered in making its award that the employment was the dominant purpose of the plaintiff in making his trip upon the day in question. The commission found that the injuries

complained of arose out of and in the course of plaintiff's employment and made an award accordingly.

We think the commission was in error in considering that the injury occurred in the course of plaintiff's employment. If plaintiff on his return from the vicinity of Holland had intended merely to carry out the course of his employment, he would have returned by M-21 to Grandville. Instead, at the suggestion of his wife he made diversion from such direct route from one place where he was carrying out the terms of employment to the next place that he would go to in the course of such employment and went actually 3 or 4 miles distant in another direction at his wife's suggestion and for her enjoyment and had not returned to the direct line of travel in his employment when the accident in question in this case occurred.

Among many Michigan cases, see *Conklin* v. *Industrial Transport, Inc.*, 312 Mich 250; *Haggar* v. *Tanis*, 320 Mich 295; and the majority opinion in *Carner* v. *Sears, Roebuck & Company*, 337 Mich 219.

The award appealed from is vacated. Costs to appellants.

DETHMERS, C. J., and BUTZEL, CARR, and SHARPE, JJ., concurred with REID, J.

ADAMS, J. (*dissenting*). It is an accepted rule in relation to the workmen's compensation act, that a laborer, performing services off the employer's premises, who has left his regular route for personal reasons is not within the ambit of his employment until he has returned to that regular route at a point not more distant from his destination than the point of his departure. That rule should not be applied to the circumstances of this case. All rules are subject to exception and the facts here presented do not fit into the usual pattern.

Plaintiff was employed to sell his employer's products in an undefined area centered about Grand Rapids. No route was laid out for him nor schedule fixed. He had no prescribed hours of employment. He furnished his own transportation, paid his own expenses and received a commission only on those sales actually made. The conditions of his employment are not comparable to the customary situation where an employee with fixed income and definite hours of employment is directed to an established point of destination. Deviation from the regular route in such cases is obviously outside the intended scope of the employment.

In this case the only directive given to plaintiff by his employer on the day of the accident was to call on certain people. Two of the persons to be called upon were not at home in the afternoon and if they were to be seen that day, they had to be contacted in the evening. Plaintiff kept all of his other assignments of the day and then started for dinner in a direction away from Grandville, the area of his evening calls. After driving some 3 miles, he changed his mind and turned towards the Grandville area in order that he might be in that vicinity after the dinner hour. Regardless of whether he had temporarily interrupted his services to his employer or not, it seems clear that when he turned towards Grandville for the purpose of carrying out his intent to call on customers in that area, he was within the ambit of his employment as understood by both employee and employer. His reason for going in that direction was to serve his employer. His presence in the area where the accident happened, the fact of his being in an automobile at the time of the accident and the path that he was traveling were all brought about by the purposes of his employment. There was a clear and certain causal relation between the circumstances of the accident and his employment.

"An accident, to be compensable, must be one arising 'out of' as well as 'in the course of' the employment. *Appleford* v. *Kimmel*, 297 Mich 8. To arise 'out of' the employment the injury sustained must have a causal connection with the work to be performed; it must be one which follows as a natural incident to the employment, be connected with it, and not the result of a risk disassociated therefrom. See *Appleford* v. *Kimmel, supra; Dent* v. *Ford Motor Company*, 275 Mich 39; *Rucker* v. *Michigan Smelting & Refining Company*, 300 Mich 668." *Meehan* v. *Marion Manor Apartments*, 305 Mich 262.

To say that at the time of the accident he was not in the service of his employer because of a fixed and all-encompassing rule would bring about a result not intended by the act. Application of the general rule to employment of the type here presented cannot be justified in logic or right. If applied, the employee would at all times be required to travel the customary or generally used route from customer to customer. Otherwise, in the course of a normal working day he would experience a constant change of status from employment to unemployment and back again. A stop for a cup of coffee would suspend the relationship. Taking a chance acquaintance a short distance off route or purchasing a package of cigarettes would have the same effect. Such is not the intent of the law and surely the parties to the employment contract did not anticipate such a result.

The conditions of employment in this case distinguish it from those cases where the general rule has been applied.

" 'The principal issue in this case is whether plaintiff's injury arose out of and in the course of his employment. We have repeatedly held that the question of whether an injury can be said to have arisen out of and in the course of the employment depends upon the particular facts and circumstances of each

case. Under the statute (CL 1948, § 413.12 [Stat Ann 1949 Cum Supp § 17.186]), findings of fact by the workmen's compensation commission are, in the absence of fraud, conclusive, if supported by competent evidence.' *Tegels* v. *Kaiser-Frazer Corporation*, 329 Mich 84." *Carner* v. *Sears, Roebuck & Company*, 337 Mich 219, 225.

The plaintiff was within the ambit of his employment when the accident occurred.

" 'An injury is received "in the course of" employment, as that term is used in the workmen's compensation act, when it comes while the workman is doing the duty which he is employed to perform (CL 1929, § 8417, as amended by PA 1943, No 245)*.' " *Carner* v. *Sears, Roebuck & Company, supra,* 226.

The accident arose out of and in the course of his employment and plaintiff should be compensated. The award should be affirmed.

BUSHNELL, J., concurred with ADAMS, J.
BOYLES, J., did not sit.

---

* CL 1948, § 412.1 (Stat Ann 1950 Rev § 17.151).—REPORTER.