THOMAS v CERTIFIED REFRIGERATION, INC

OPINION OF THE COURT

1. WORKMEN'S COMPENSATION—DEVIATION FROM EMPLOYER'S BUSINESS
—PERSONAL MISSION—PRECEDENT.

*Conklin v Industrial Transport, Inc,* 312 Mich 250 (1945), which
held that even a slight deviation to carry out a personal
mission would preclude an award of workmen's compensation
due to basic changes in the workmen's compensation law, is no
longer controlling precedent in Michigan.

2. WORKMEN'S COMPENSATION—RESPONDEAT SUPERIOR—SCOPE OF EM-
PLOYMENT—COURSE OF EMPLOYMENT.

*Respondeat superior* and "scope of employment" are no longer
the principles underlying the passage of workmen's compensa-
tion legislation; workmen's compensation does not involve the
doctrine of *respondeat superior* and recovery in compensation
cases does not turn on the common-law concept of scope of
employment but upon the statutory requirement of course of
employment.

3. WORKMEN'S COMPENSATION—COURSE OF EMPLOYMENT—PERSONAL
MISSION.

A workman's injury "arose out of" and "in the course of" his
employment, if the facts establish that he acted under general
acceptance by the employer that company vehicles would be
used from time to time for personal purposes where he was
injured while driving a truck, furnished and owned by his
employer, from his home where his employer permitted him to
keep it overnight and deviated from his normal route to work
to take his daughter to school.

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 5, 6, 10, 11] 58 Am Jur, Workmen's Compensation §§ 240, 241.
[2] 58 Am Jur, Workmen's Compensation § 2.
[4] 58 Am Jur, Workmen's Compensation § 217 *et seq.*
[7] 58 Am Jur, Workmen's Compensation §§ 14, 19.
[8] 58 Am Jur, Workmen's Compensation § 26 *et seq.*
[9, 11] 58 Am Jur, Workmen's Compensation §§ 483, 530 *et seq.*

4. WORKMEN'S COMPENSATION—INJURIES GOING TO AND FROM WORK.

Generally, injuries sustained in going to and from work are not compensable by workmen's compensation.

5. WORKMEN'S COMPENSATION—PRIVATE EXCURSION—DUAL PURPOSE.

An authorized but totally private excursion such as using a company vehicle for weekend personal errands certainly is not covered by workmen's compensation because such trips lack a dual purpose of furthering an employee's own interest and at the same time performing a service for the employer or a sufficient nexus between the employment and the injury.

6. WORKMEN'S COMPENSATION—PERSONAL BUSINESS DETOUR—DEVIATION FROM EMPLOYER'S BUSINESS—CIRCUMSTANCES OF EMPLOYMENT.

A personal business detour is not a circumstance of the employment, if it is so great that the deviation dwarfs the business portion of the trip; in any workmen's compensation case the nature of the deviation must be balanced against the clarity of authorization and effect of the activity on the employment relationship or the interests of the employer.

7. UNEMPLOYMENT COMPENSATION—FAULT—WORKMEN'S COMPENSATION.

Unemployment compensation is properly grounded on a theory of fault in which compensation is denied when the fault of an employee is established, but in workmen's compensation cases questions of fault have no place in the deliberations on the issue of compensation.

DISSENTING OPINION

M. S. COLEMAN, J.

8. CONSTITUTIONAL LAW—INTERPRETATION—FRAUD—FINDINGS OF FACT—WORKMEN'S COMPENSATION.

*Michigan's Constitution says that "in the absence of fraud unless otherwise provided by law" findings of fact "in workmen's compensation proceedings shall be conclusive"; such language does not admit interpretation (Const 1963, art 6, § 28).*

9. WORKMEN'S COMPENSATION—FINDINGS OF FACT—SUPREME COURT—CONSTITUTIONAL LAW.

*Not only must the Michigan Supreme Court recognize and not overlook a finding of a workmen's compensation referee that prohibition by defendant-employer against the use of company owned trucks by driver-employees for use on personal business*

*has been established, but the Court is constitutionally compelled to accept such finding (Const 1963, art 6, § 28).*

10. WORKMEN'S COMPENSATION—DUAL-PURPOSE RULE.

*Employee who was acting contrary to the rules of his employer may not claim the protection of the dual-purpose rule in a workmen's compensation case.*

11. WORKMEN'S COMPENSATION—FINDINGS OF FACT—PERSONAL MISSION—COURSE OF EMPLOYMENT.

*Employee's claim for workmen's compensation must fail where the findings of fact were that the employee was not acting under orders of the employer at the time of his injury nor were his actions furthering the business of the employer and the referee and the Workmen's Compensation Appeal Board agreed that the mission was personal to the plaintiff employee; the employee did not suffer an injury that arose out of or in the course of his employment.*

Appeal from Court of Appeals, Division 3, T. M. Burns, P. J., and R. B. Burns and Fitzgerald, JJ., denying application for leave to appeal from an order of the Workmen's Compensation Appeal Board. Submitted June 5, 1974. (No. 10 June Term 1974, Docket No. 54,600.) Decided September 6, 1974.

Claim by Forrest Thomas against Certified Refrigeration, Inc., and Michigan Mutual Liability Company for workmen's compensation. Suzette Thomas, administratrix of the estate of Forrest Thomas, deceased, substituted as party plaintiff. Award denied. Court of Appeals denied plaintiff's application for leave to appeal. Plaintiff appeals. Remanded to Workmen's Compensation Appeal Board for further proceedings.

*Glotta, Adelman & Dinges,* for plaintiff.

*LeVasseur, Werner, Mitseff & Brown (E. R. Whinham, Jr.,* of counsel), for defendants.

WILLIAMS, J. The issue in this case is whether an employee, allowed to garage a company vehicle at his home overnight, seriously injured on his way to work during a detour to deliver his daughter to school, suffered an injury that "arose out of" and "in the course of" his employment. In deciding this issue the following three questions must be resolved:

1) Is *Conklin v Industrial Transport, Inc,* 312 Mich 250; 20 NW2d 179 (1945), which held that even a slight deviation to carry out a personal mission would preclude compensation, still good law?

2) Is injury compensable which occurs off the employment premises during an employer approved personal activity, where there is some general employer interest?

3) Is injury compensable which occurs off the employment premises during a personal activity unapproved by the employer but where the activity is incidental to the employment relationship?

We answer the first question in the negative and remand the matter to the Workmen's Compensation Appeal Board for further proceedings not inconsistent with our observations on the last questions so that those two matters may be more fairly considered by the board and parties now that *Conklin* no longer controls.

I —FACTS

On May 1, 1968 at approximately 7 a.m., Forrest Thomas, plaintiff[1] while driving a Chevrolet van, collided with another vehicle on northbound Southfield Freeway near Joy Road and, as a result,

---

[1] Forrest Thomas died on August 6, 1970 and Suzette Thomas, administratrix of his estate was substituted as party plaintiff.

was permanently and totally disabled until his death on August 6, 1970. The truck Thomas was driving was furnished and owned by the defendant-appellee, Certified Refrigeration, Inc., who had employed Thomas as a refrigerator serviceman since 1966.

Testimony was received that the van was designed to provide maximum payload for wheelbase allowed and as a result presented special safety hazards in that the driver had no protection in front-end collisions and there was no partition between the driver and the back of the van. Testimony also was given that Thomas owned a Ford which was structurally safer than the van and which he would have used to drive to work had he not driven the truck home each night.

Thomas would drive the truck to work in Detroit from his home in Dearborn Heights and was required to report by 8:30 a.m. each working day. He would then proceed to make his daily service calls and drive home at the end of the day without first reporting back to his employer's premises. All drivers were permitted and, in fact, took home the trucks they drove although this action was not required by the employer. Testimony was received that by allowing the trucks to remain at the employees' homes overnight, the employer saved costs of enlarging the parking facilities and installing security devices. The trucks carried the company name and slogan, contained equipment necessary to repair refrigerators and were equipped with two-way radios so that the serviceman could be directed to service calls in emergencies without first reporting to work.

On the day of the accident Thomas deviated from his normal route to work and was on his way to pick up his daughter at her home near South-

field and Plymouth Road to take her to school. The route which Thomas planned to take to work upon dropping the daughter at school is unknown. The employer had an expressed policy prohibiting driver-employees from using the trucks for personal use, of which the plaintiff was fully cognizant. However, testimony was received indicating that the employer acquiesced to some forms of personal use. No employee had been fired or otherwise punished for using the trucks for personal business even though several employees had been involved in accidents while on personal missions.

The hearing referee, on March 21, 1969, found the injury did not arise out of and in the course of plaintiff's employment. The Workmen's Compensation Appeal Board affirmed on September 1, 1972 and this Court granted leave to appeal on May 31, 1973. 389 Mich 795. The defendant moved for reconsideration which was granted. 390 Mich 771–772 (1973). Application for leave to appeal was then granted on November 1, 1973. 390 Mich 797–798.

## II —*CONKLIN*

The Workmen's Compensation Appeal Board in its opinion in this case relied upon but forthrightly challenged this Court to review the stringent rule in *Conklin v Industrial Transport, Inc,* 312 Mich 250; 20 NW2d 179 (1945) in the light of today's law. The board said:

"Even such a slight deviation from furthering his employer's business for the sole purpose of carrying a personal mission would be a bar to plaintiff's Workmen's Compensation claim. *Conklin v Industrial Transport,* 312 Mich 250 (1945). *A Fortiori,* in this particular case plaintiff was not in the course of his employment at the time of the accident, because he had not even

entered a business-connected path from which to deviate.

"Whether the Supreme Court in 1972 might interpret the law differently than two decades ago is not up to this Board to speculate."

In *Conklin* Chief Justice STARR with absolute accuracy and ample precedent reflected the law of workmen's compensation of that day. However, the basis of the workmen's compensation law has changed radically since that day, and *Conklin* is no longer apt nor controlling. *Conklin* relied on the scope of employment analysis:

"The present case is controlled by our decision in *Jeffries v. Jodawelky,* 304 Mich. 421 [8 NW2d 121 (1943)], in which we said:
" 'If it be assumed that the route Jodawelky intended to take was feasible, though not the shortest, such facts would not fasten liability on the employer *if the employee had departed from the scope of his employment and was engaged on business personal to himself.'* " (Emphasis in *Conklin.)* 312 Mich 250, 256.

*Jeffries* was an action in negligence invoking *respondeat superior. Respondeat superior* and "scope of employment", as this Court stated in *Crilly v Ballou,* 353 Mich 303, 310; 91 NW2d 493 (1958) are no longer:

"[T]he principles underlying the passage of compensation legislation. Scope of employment has its uses, it is true, in the application of the doctrine of *respondeat superior.* But compensation does not involve *respondeat superior* and recovery in compensation cases turns not on the common-law concept of scope of employment but upon the statutory requirement of course of employment. The 2 concepts have a different content. In fact, distinguished students of the subject have stated that, 'perhaps the most important guide' for the interpretation of the expression 'arising out of and in the course

of his employment' is to 'realize that it should be sharply differentiated from the technical phrase "scope of employment" designed to circumscribe the area of vicarious liability to third persons.' "[2]

Our response to the Workmen's Compensation Appeal Board therefore is that they properly raised the question of *Conklin's* continuing validity. *Conklin* no longer is controlling precedent. *Cessante ratione legis, cessat et ipsa lex.*

## III —PERMITTED PERSONAL ACTIVITY

It is a fair conclusion from the facts that Thomas and the other employees of Certified Refrigeration, Inc. were performing a service for that company in taking company vans home, caring for them there and displaying the company name and slogan on them. If the facts in addition establish, and this is not clear, that Thomas acted under general acceptance by the employer that company vehicles would be used from time to time for personal purposes, then it would appear that this Court on the basis of a combination of *Burchett v Delton-Kellogg School,* 378 Mich 231; 144 NW2d 337 (1966); *Howard v Detroit,* 377 Mich 102; 139 NW2d 677 (1966) and *Beaudry v Watkins,* 191 Mich 445; 158 NW 16 (1916) would be justified in finding that Thomas' injury "arose out of" and "in the course of" his employment.

In *Burchett,* this Court found compensable an

---

[2] *Conklin* also relied upon *Meehan v Marion Manor Apartments,* 305 Mich 262; 9 NW2d 534 (1943) which in light of *Whetro v Awkerman,* 383 Mich 235; 174 NW2d 783 (1970), is of doubtful validity today. *Haggar v Tanis,* 320 Mich 295; 30 NW2d 876 (1948); *Carner v Sears, Roebuck & Co,* 337 Mich 219; 59 NW2d 263 (1953); and *Weersing v Airseal Insulating & Roofing Co,* 338 Mich 400; 61 NW2d 630 (1953) which also denied recovery in situations involving deviations were based upon reasoning similar to that employed in *Conklin* and likewise are no longer controlling on this question.

injury while enroute from school of a school teacher required by her job to bring school work home every night. We held, through Chief Justice T. M. KAVANAGH, that although what the employee was doing might further her own interest,[3] her injury was compensable so long as she was at the same time performing a service for her employer. Chief Justice T. M. KAVANAGH capsulized the rule as follows:

"The rule has been reduced to a simple formula: If a special trip would have had to be made if the employee had not combined this service with his going or coming trip, the dual-purpose rule applies." 378 Mich 231, 236.

See also *Clifton v Kroger Grocery & Baking Co,* 217 Mich 462; 187 NW 380 (1922); *Anderson v Kroger Grocery & Baking Co,* 326 Mich 429; 40 NW2d 209 (1949).

In *Burchett* the entire trip was wholly dual-purpose. In *Thomas* part of the trip was predominantly personal, although the overall trip was dual-purpose.

In *Howard,* as pointed out in *Burchett,* "[p]laintiff Howard was concededly on his own time and performing no service for his employer." 378 Mich 231, 234. The facts in *Howard* were that the employee bus driver had a morning run and an afternoon run with from three quarters of an hour to five hours in between on different days. While food was available at the terminal, Howard normally went home and was going home the day he was injured. Justice O'HARA speaking for this Court said "it was a circumstance of his employment that placed plaintiff in this case where he

---

[3] Generally, injuries sustained in going to and from work are not compensable. *Lipinski v Sutton Sales Co,* 220 Mich 647; 190 NW 705 (1922); *Dent v Ford Motor Co,* 275 Mich 39; 265 NW 518 (1936); *Ditch v General Motors Corp,* 345 Mich 178; 76 NW2d 64 (1956).

was when he was accidentally injured." (377 Mich 102, 110.) Furthermore, this Court said:

"We are not unmindful that no incident of plaintiff's employment *required* him in an absolute sense to leave the terminal during the 5-hour interval. If he did choose to leave he was certainly not required to travel by automobile." (Emphasis in *Howard.)* 377 Mich 102, 109.

Yet as we have indicated this Court said "it was a circumstance of his employment" that set up the injury.

A principle similar to that in *Howard* is found in *Nemeth v Michigan Building Components,* 390 Mich 734; 213 NW2d 144 (1973). That case, however, involved work in a factory rather than a driving case such as *Thomas.* In *Nemeth,* the employer permitted the employee to stay after work and use company machinery for personal purposes. The employee was injured when operating that equipment. This Court through Justice LEVIN held that the employer derived the benefit of promoting and maintaining good employee relationships by allowing the employee to use company equipment after hours and concluded that:

"There is a sufficient nexus between the employment and the injury in a case where an employee sustains an injury while using·equipment provided by the employer on the employer's premises so that recovery should be allowed even though the injury occurred after regular working hours and the equipment was being used for a purpose other than the manufacture of the employer's products." 390 Mich 734, 738.

Finally, *Beaudry v Watkins,* 191 Mich 445; 158 NW 16 (1916) deals with a delivery boy, reluctantly given permission to lunch home between

errands, being injured on his way from home to the next job, when the truck he was holding on to turned quickly and threw him off his bicycle under the wheels of the following truck. This Court affirmed compensation even though he was on a detour.[4]

So in *Beaudry* we allowed compensation during the return from an authorized deviation and in *Burchett* we permitted compensation to an employee injured during a trip serving a dual personal and business purpose. These cases combined with *Howard,* which authorized compensation in some instances where the injury occurred during an activity involving a purely personal purpose, would cover *Thomas,* if indeed the personal purpose was a matter of general tolerance in view of the employer interest in the employee garaging of the trucks, etc.[5]

---

[4] In *Beaudry* the delivery boy was returning from a personal errand (lunch) while Thomas had not as yet completed his personal mission (picking up his daughter and taking her to school). However, this Court will not follow the path taken by some courts in other jurisdictions which have granted or denied compensation based on rigid rules such as whether the personal mission was completed and the employee was returning to the business route. *See London Guarantee & Accident Co v Herndon,* 81 Ga App 178; 58 SE2d 510 (1950). In that case an employee was returning home to make out business reports, but drove past the turn nearest his home and continued in a direction away from his ultimate destination. In the process of turning his vehicle around to return home, he was killed. The Court stated because at the moment he stopped and attempted to turn around he resumed the duties of his employment, and compensation was allowed. However, the Court suggested that any point after he passed his turn but before he stopped to turn around, he was not in the scope of employment and recovery would have been denied.

In *Beaudry* the Court placed importance on the fact that the accident occurred within the time during which the boy was employed. The injury to Thomas occurred after he had commenced to bring the truck to his employer's place of business, and thus, was within a time during which he was employed when the accident took place even though he had not actually reported for work.

[5] Testimony was introduced suggesting that the employer knew of and acquiesced to personal uses of vehicles by servicemen on several occasions:

*A. (Testimony of Charles Miranti, union steward.)*
"A. Occasionally they come up, yes.

We do not suggest that every authorized use of a
company-owned vehicle or deviation from a busi-

"*Q.* Have you ever transported Mr. Crawford, the president of the
company, in your truck?

"*A.* Yes, I have, in the morning. I have picked him up a couple of
times from home and brought him in to work.

"*Q.* And why is this?

"*A.* Oh, he has had trouble with the car or something, and I had to
go and pick him up.

"*Q.* Did you ever have a conversation with him at these times?

"*A.* Yes, one time he asked me if I ever used it for personal
business and I said yes."

*B. (Testimony of Charles Miranti.)*

"*Q.* Four years as union steward, has any grievance been filed or
suspension or firing of any employees for personal use of trucks?

"*A.* Not personal use of trucks, no.

\* \* \*

"Do you know of any grievance being filed against any driver,
repairmen, for use of a company vehicle for other than company
business?

"*A.* No, sir.

"*The Referee:* That's in the last four years?

"*A.* In the last four years, yes, sir."

*C. (Testimony of Robert John Crawford, company president.)*

"*Q.* I see. Mr. Crawford, at any time has anyone ever been sus-
pended or fired for using your trucks on personal business?

"*A.* Suspended or fired, they have paid for two trucks that they
damaged on personal business, but they've never been suspended.

"*Q.* He was in a truck and had a wreck?

"*A.* That was what the police report was.

"*Q.* Was he suspended or fired?

"*A.* No, sir.

"*Q.* He just paid for the property damage to the truck?

"*A.* Yes, sir."

*D. (Testimony of Robert John Crawford.)*

"*Q.* I see. Mr. Crawford, are you aware of coffee breaks that they
take?

"*A.* I sure am, sir.

"*Q.* They go and assemble at different restaurants around there, is
that right?

"*A.* Yes, sir.

"*Q.* And there is a gathering of Certified Refrigeration trucks at
several different restaurants within the area?

"*A.* I imagine so, sir. They all put coffee on their time cards, one-
quarter hour.

"*Q.* Did you ever go over and talk to them?

"*A.* Only once, sir, about four years ago.

ness route will fall within this triad of cases. An authorized but totally private excursion such as using the company vehicle for weekend personal errands certainly is not covered because such trips lack a dual purpose required by *Burchett* or "a sufficient nexus between the employment and the injury" required by *Nemeth.* If a personal business detour is so great that the deviation dwarfs the business portion of the trip, it no longer can be said that it is "a circumstance of [the] employment" as required by *Howard.* This Court will not attempt to fix any formula, but in any case the nature of the deviation must be balanced against the clarity of authorization and effect of the activity on the employment relationship or the interests of the employer.

We recognize that the Workmen's Compensation Appeal Board accepted the referee's finding of "[p]rohibition by Defendant employer against use of company trucks by driver-employees for use on personal business".

Obviously this Court does not overlook that finding, but in view of the fact this Court is remanding the matter to the board for further consideration not inconsistent with this opinion, the board may wish to permit the parties to address themselves to the point that despite an expressed company policy forbidding personal use by employees, the employer acquiesced in use of the trucks by drivers for personal purposes and whether such tolerance by the employer encompassed the nature and degree of deviation contem-

---

"*Q.* And they were all scattered?

"*A.* They scattered when I came in. I couldn't buy them their coffee. This was before I made them put it on their time cards.

"*Q.* Have you ever received phone calls concerning a number of Certified Refrigeration trucks scattering at a particular beer parlor?

"*A.* Yes, I've received one from a commercial department, trucks."

plated by Thomas on the day the accident took place. In determining whether there was acquiescence on the part of the employer, implied agreements or understandings between employer and employees, the employer's reaction to specific personal uses in the past and the nature of the employment itself may be relevant.

## IV —UNPERMITTED PERSONAL ACTIVITY

If it were found that Thomas' detour for personal business was authorized through the employer's acquiescence or in some other manner, then it would be unnecessary to consider the further issue whether injury is compensable which occurs off the employer's premises during a personal activity unapproved by the employer but where the activity is reasonably incidental to the employment relationship.

Such consideration would be of first impression. It would involve the extension of the rule in *Crilly v Ballou,* 353 Mich 303; 91 NW2d 493 (1958) from its normal factory locale to the open road.

Such an extension might well fall within the general policy enunciated by Justice T. G. KAVANAGH in *Whetro v Awkerman,* 383 Mich 235, 242; 174 NW2d 783 (1970), where he said for this Court:

"The purpose of the compensation act as set forth in its title is to promote the welfare of the people of Michigan relating to the liability of employers for injuries or death sustained by their employees. The legislative policy is to provide financial and medical benefits to the victims of work-connected injuries in an efficient, dignified, and certain form. The act allocates the burden of such payments to the most appropriate source of payment, the consumer of the product."

That certainly was the policy animating *Crilly.*

In fact it might be said that workmen's compensation, like the gentle rain from heaven, falls upon the just and unjust alike so long as the injury arose out of and in the employment ambience.[6]

Justice TALBOT SMITH in *Crilly,* in reaching his conclusion that the deviation from regular work commonly known as horseplay was part of the employment environment and hence injuries resulting therefrom were compensable, quoted from *Secor v Penn Service Garage,* 19 NJ 315; 117 A2d 12 (1955) as follows:

"'An employee is not an automaton, and, even when he is highly efficient, he will to some extent deviate from the uninterrupted performance of his work. Such deviation, if it be considered minor in the light of the particular time, place and circumstance, is realistically viewed by the employer and the employee as a normal incidence of the employment relation and ought not in this day be viewed as legally breaching the course thereof. Fulfillment of the high purposes of our socially important and ever broadening workmen's compensation act suggests this approach and nothing in the statutory terms dictates any narrower position.'" 353 Mich 303, 314.

Whether and what kind of a rule extending *Crilly* to the vehicle cases should be adopted by this Court may not need to be confronted by this Court, if some form of acceptance or tolerance of private purpose driving is found on remand. In any event, this Court would be better prepared to consider the matter with a record, Workmen's

---

[6] In this regard it is important to distinguish workmen's compensation from unemployment compensation. The latter is properly grounded on a theory of fault in which compensation is denied when the fault of an employee is established, but in workmen's compensation cases questions of fault have no place in the deliberations on the issue of compensation.

Compensation Appeal Board opinion and briefs of counsel specifically directed to that issue.

## V —CONCLUSION

As already indicated, we hold in response to the Workmen's Compensation Appeal Board question that *Conklin* due to basic changes in the workmen's compensation law is no longer controlling precedent in Michigan. We have examined the other two questions raised in this matter but *do not* find we would be justified in ruling definitively on either as both parties and the Workmen's Compensation Administration deserve an opportunity to prepare a record, decision and arguments directed to our observations in this case, and we in turn, if necessary, would be in a better position to do justice for all concerned.

The matter is remanded to the Workmen's Compensation Appeal Board for further proceedings not inconsistent with this opinion. This Court retains jurisdiction.

Costs to abide the final result.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, SWAINSON, and LEVIN, JJ., concurred with WILLIAMS, J.

M. S. COLEMAN, J. *(dissent)*. The decision of the Workmen's Compensation Appeal Board should be affirmed. The facts demonstrate that the employee's injuries did not arise out of or in the course of his employment. The employee's injuries were not actionable under the Workmen's Compensation Act, although he is not without remedy elsewhere.

The employee was injured when the truck he was driving struck the rear end of an automobile.

The accident occurred at around 7 a.m. on the morning of May 1, 1968. The employee was going to his daughter's residence three or so miles to the north of his home to give her a ride to school. He was to be at his place of employment at 8:00–8:30 a.m. It was located to the east of his residence.

The referee found, the Workmen's Compensation Appeal Board agreed and the record clearly proves

"that evidence submitted by or on behalf of Plaintiff fails to convince this Referee that at the time of said truck-auto accident that Plaintiff was carrying out any order or orders of his employer nor was he performing any duty or duties to further the business of his employer, but rather, that his mission was personal to the Plaintiff employee."

The record also shows that the employer prohibited use of company trucks for the employees' personal business.[1] Although no employee was dis-

---

[1] The employee made the following remarks during the taking of his deposition:

"*Q.* Sir, are you aware of a company rule against using the trucks for personal business?

"*A.* Yes.

"*Q.* So that all you were suppose to do is drive the truck from your home to work and then directly home again, isn't that true?

"*A.* That's correct.

"*Q.* And you were not suppose to use it for your own personal affairs, isn't that correct?

"*A.* Not for personal affairs.

"*Q.* It was suppose to be strictly company business whenever you used the truck?

"*A.* Yes."

The president of defendant company testified in part:

"*The Referee:* Are you aware that in any of the trucks there's posted any prohibition against using the trucks for personal use or for carrying passengers other than the driver?

"*A.* We have posted this on several different occasions over the last numerous years.

"*The Referee:* In the truck?

"*A.* Not in the truck, we, and the dispatcher hands them a memo.

"*The Referee:* Defendant's Exhibit 1 has been admitted. Is this your signature?

"*A.* Yes, it is.

charged for such use, any vehicle or other damage occurring during personal business became the employee's liability.[2] The employer did not even tacitly condone use of the company vehicle for personal purposes.

On the basis of the factual findings, the referee

---

"*The Referee:* This is dated April 13, 1966, is that correct?

"*A.* Yes.

"*The Referee:* Have there been prior notices?

"*A.* Prior, yes.

"*The Referee:* There have been?

"*A.* Yes.

"*The Referee:* You proceed to have them prepared, you said, then they are what?

"*A.* Handed to the man. Normally, the best way to get, to give it to them is with the pay check."

[2] The company president testified on cross-examination:

"*Q.* I see. Mr. Crawford, at any time has anyone ever been suspended or fired for using your trucks on personal business?

"*A.* Suspended or fired, they have paid for two trucks that they damaged on personal business, but they've never been suspended.

"*Q.* He was in a truck and had a wreck?

"*A.* That was what the police report was.

"*Q.* Was he suspended or fired?

"*A.* No, sir.

"*Q.* He just paid for the property damage to the truck?

"*A.* Yes, sir."

On redirect examination he further explained the company policy:

"*Q.* There was more than one occasion or was that the only occasion?

"*A.* Just two of them.

"*Q.* That you recall?

"*A.* That I know of.

"*Q.* Let's take another situation, let's say the man is involved in a collision on Company business, do you charge him for it, then?

"*A.* No, sir.

"*Q.* Do you have any insurance for collision?

"*A.* No, sir.

"*Q.* So, if it's Company business, you pay for it; if he is on his own personal business and you catch him, then he has to pay for it, is that right?

"*A.* Yes, sir."

The company official who ran the personnel office and handled financial matters testified as to two instances where employees were required to pay for damages to company vehicles. He said that Mr. Thomas himself had been billed for damages to the company vehicle caused by the accident in the instant case.

held "that the personal injury sustained by Plaintiff * * * did not arise out of and in the course of his employment by said Defendant employer, and, accordingly, compensation is denied." The Workmen's Compensation Appeal Board affirmed saying "in this particular case plaintiff was not in the course of his employment at the time of the accident, because he had not even entered a business-connected path from which to deviate." The board held that even if plaintiff had "entered a business-connected path" the claim would be barred by *Conklin v Industrial Transport, Inc,* 312 Mich 250; 20 NW2d 179 (1945).

The board's reference to *Conklin* was made with regard to a posed hypothetical and was not required for its holding in this case. I reserve judgment on *Conklin's* continuing validity until a case arises involving an employee's deviation from the normal course of employment for the sole purpose of carrying out a personal mission. *Conklin* does not state a rule of law applicable to our facts.

In addition to unnecessarily overruling *Conklin,* the Court has remanded this case for investigation of whether the employee "acted under general acceptance by the employer that company vehicles would be used from time to time for personal purposes". Such action is likewise unnecessary.

Article 6, § 28 of our constitution says that "in the absence of fraud unless otherwise provided by law" findings of fact "in workmen's compensation proceedings shall be conclusive." Such language does not admit interpretation. Also see MCLA 413.12; MSA 17.186.

The referee found that "[p]rohibition by Defendant employer against the use of Company owned trucks by driver-employees for use on personal business has been established (D. ex. No. 1) with concurrence by Plaintiff." The board agreed.

The Court has "recognized" this finding and said it "does not overlook that finding". Not only must we "recognize" and "not overlook" such finding, but we are constitutionally compelled to accept such finding.

The employee's accident occurred during a purely personal activity undertaken before he reported to work or began his assigned duties. The cases cited by the Court do not sustain an opinion indicating that injuries resulting from such an accident are compensable under the workmen's compensation law.

The workman in *Crilly v Ballou,* 353 Mich 303; 91 NW2d 493 (1958), sustained an injury while throwing shingles. The employer claimed such conduct was not within the course of employment. The Court awarded compensation requiring "that there be a causal connection between the work, or the incidents thereof, the working conditions, and the injury". Such requirement "serves to exclude the purely personal, nonwork connected disputes". Also see *Fidelity & Casualty Co of New York v DeShone,* 384 Mich 686; 187 NW2d 215 (1971).

In *Howard v Detroit,* 377 Mich 102; 139 NW2d 677 (1966), plaintiff sought compensation for injuries received while returning to work for the second half of his split shift. The Court noted that "plaintiff had not finished his day's work." The following facts taken from *Bisdom v Kerbrat,* 251 Mich 316; 232 NW 408 (1930), were considered applicable:

"In the case cited, plaintiff was enroute to his dinner, rather than returning thereafter, but the special circumstance was created by a specific requirement of his employment on that day. It resulted from a direct order from his employer and had no application to any other day. The essential point abides. The circumstance was a

deviation from his regular normal working schedule. It was for his employer's benefit and was an incident of his contract of employment. Thus it was that a circumstance of his employment placed him where he was at the time of his accidental injury. So too, it was a circumstance of his employment that placed plaintiff in this case where he was when he was accidentally injured."

The Court vacated an order denying benefits and remanded with instructions to award the employee benefits. Also see *Beaudry v Watkins*, 191 Mich 445; 158 NW 16 (1916).

In *Burchett v Delton-Kellogg School*, 378 Mich 231; 144 NW2d 337 (1966), the Court established the "dual-purpose rule". The following passage from *Clifton v Kroger Grocery & Baking Co*, 217 Mich 462; 187 NW 380 (1922) was cited as support:

"This general rule has its full application to common laborers and other employees who work during stated hours at specific places, and when they are through for the day are free to go where they like and do as they please, with no further responsibility under their employment or duty to perform for their employers until working hours begin the next day or until they again resume their employment. If in the meantime they are accidentally injured while going somewhere or doing some act wholly for their own benefit they are not protected by the statute. But that rule does not necessarily apply where the injured employee is yet acting within the scope of his employment, carrying out the orders of his employer and performing some duty to further the latter's business. Where he was going or what he was doing might also further his own interest but it would not in itself bar him from recovery.

\* \* \*

"That plaintiff was performing a daily duty imposed by distinct orders of his employer at the time and as required by the terms of employment is undisputed, and there is evidential support for the conclusion of the

board that there were peculiar circumstances surrounding this case."

While reserving my judgment on the "dual-purpose rule", I do not believe the employee in this case may claim its protection. The employee was, in fact, acting contrary to the rules of his employer.

The findings of fact in the instant case were that the employee was not acting under orders of the employer nor were his actions furthering the business of the employer. The referee and the board agreed that the "mission was personal to the Plaintiff employee."

I find no support for the employee's claim in the cases cited above. They compel me to conclude that the claim must fail.

I believe the referee and the Workmen's Compensation Appeal Board reached a proper legal conclusion based on the established facts. The employee did not suffer an injury that arose out of or in the course of his employment.

I would affirm.

J. W. FITZGERALD, J., did not sit in this case.