BUSH v PARMENTER, FORSYTHE, RUDE & DETHMERS

1. WORKMEN'S COMPENSATION—DRUNK DRIVING—CLAIMANT'S WRONG-
   FUL CONDUCT—PROXIMATE CAUSE OF INJURIES.

   It is well established that workmen's compensation benefits may
   be denied where an employee's injuries occurred as a result of
   drunk driving, for then the employee's arguably wrongful
   conduct, becoming drunk in the service of his employer, could
   be the proximate cause of the injuries.

2. WORKMEN'S COMPENSATION—BUSINESS TRIPS—HAZARDS OF TRIP.

   The timing of a business trip by an employee, except in unusual
   circumstances, bears no relationship to the hazards of the trip
   and it is the general hazards which allow workmen's compensa-
   tion liability to be imposed on an employer in the first place for
   injuries to an employee while on a business trip for the em-
   ployer.

3. WORKMEN'S COMPENSATION—BUSINESS TRIPS—LIABILITY OF EM-
   PLOYER—DEVIATIONS FROM BUSINESS ROUTE—RESUMPTION OF
   TRIP.

   An employer must bear the risk for one complete round trip
   where an employee is engaged in a trip of special benefit to his
   employer; deviations from the business route may or may not
   be covered, but upon resumption of the trip out or the return
   trip, following a deviation by the employee, the employer's
   liability recommences; however, a detour or deviation grossly
   disproportionate in time or distance to the business portion of
   the trip might in a proper case be deemed a disqualification for
   compensation benefits.

4. WORKMEN'S COMPENSATION—COURSE OF EMPLOYMENT—BUSINESS
   TRIPS—EXTERNAL FORCE.

   An employee was "in the course of his employment" if in fact he
   was on his way home from a trip of special benefit to his
   employer at the time of his injuries and any injury inflicted

REFERENCES FOR POINTS IN HEADNOTES
[1] 81 Am Jur 2d, Workmen's Compensation §§ 234, 239.
[2–5] 82 Am Jur 2d, Workmen's Compensation § 250.
[6] 82 Am Jur 2d, Workmen's Compensation § 568.

upon him by an external force or agency would be compensable, for as a matter of law his employment would be the occasion of his injury.

5. WORKMEN'S COMPENSATION—DISQUALIFICATION FROM BENEFITS—DEVIATION FROM BUSINESS ROUTE—PASSAGE OF TIME.

There was no disqualification from workmen's compensation benefits to a claimant for death of her deceased husband by virtue of the nature and length of the decedent's deviation from a business trip where neither the passage of time nor the nature of the deviation proximately contributed to the decedent's fatal wounds.

6. CONSTITUTIONAL LAW—WORKMEN'S COMPENSATION—WORKMEN'S COMPENSATION APPEAL BOARD—COURT OF APPEALS—FACTUAL CONCLUSIONS—LIMITED JUDICIAL REVIEW.

It is the Workmen's Compensation Appeal Board, not the Court of Appeals, which must draw factual conclusions from the evidence of record, subject to limited judicial review (Const 1963, art 6, § 28).

Appeal from Workmen's Compensation Appeal Board. Submitted June 13, 1977, at Grand Rapids. (Docket No. 29459.) Decided October 10, 1977. Leave to appeal applied for.

Claim by Yvonne Bush, widow of Orrin Bush, against the law firm of Parmenter, Forsythe, Rude & Dethmers, and St. Paul Fire & Marine Insurance Company for workmen's compensation because of the death of Orrin H. Bush. Compensation denied. Claimant appeals by leave granted. Remanded.

*McCroskey, Libner, VanLeuven, Kortering, Cochrane and Brock* (by *Edward M. Welch, Jr.*), for plaintiff.

*Smith, Haughey, Rice & Roegge* (by *Lance R. Mather*), for defendants.

Before: M. J. Kelly, P. J., and M. F. Cavanagh and J. R. Rood,* JJ.

M. J. Kelly, P. J. On leave granted, plaintiff appeals from a decision of the Workmen's Compensation Appeal Board, denying death benefit compensation on the ground that the death of plaintiff's decedent did not arise "out of and in the course" of his employment.

Plaintiff's decedent was a partner in the law firm of Parmenter, Forsythe, Rude & Dethmers. On October 5, 1971, with the approval of the managing partners of defendant law firm, he attended a probate and estate planning seminar in the City of Grand Rapids. As decedent specialized in this area of legal practice, he was expected to participate in the seminar and all his expenses were paid by defendant law firm. Defendant law firm's principal office is in the City of Muskegon.

At the conclusion of the seminar, which lasted one hour, there was a cocktail party at which decedent imbibed two drinks of presumably alcoholic content. Decedent left the cocktail party at 6:15 p.m., and was next seen at a restaurant-bar two hours later in the City of Muskegon. The proprietor of this establishment testified that decedent did not appear to have been drinking, and he consumed no alcoholic beverages while there.

Subsequently, however, decedent appeared at the Nite Hawk Bar in Muskegon not long after 8 p.m., where he stayed until 2:30 a.m. when the bar closed. During this time he consumed several alcoholic beverages. It appears to be undisputed that decedent was a victim of alcoholism.

After leaving the Nite Hawk Bar, decedent was

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

seen at an all-night restaurant, where he snacked on two hamburgers and an equal number of cups of coffee. According to the waitress, decedent gave evidence of being substantially intoxicated.

Decedent left the restaurant shortly after 3 a.m. At 3:12 a.m. the Muskegon Police received a telephone call reporting an incident on Getty Street. Police officers who responded to the call discovered decedent in his automobile, fatally wounded by a shotgun blast to the face. The investigating officer testified that, from the restaurant where decedent was last seen alive, Getty Street would be an appropriate route to decedent's home.

The Workmen's Compensation Appeal Board, after taking note of plaintiff's argument that the case should be viewed as a deviation from a business trip, in which the deviation has ended and the return trip home has commenced, commented:

"The notion that the business mission involved here opened such floodgates as to give decedent the employment-related right to go off on his own for hours upon returning to his home base area in pursuit of [B]acchanalian pleasures, and in the early morning hours of the next day when he decides to start the last leg of his journey home then re-enter the course of his employment, is so outrageous and fundamentally unreasonable as to be thoroughly ludicrous. Decedent's conduct upon returning to Muskegon not only dwarfed whatever may have remained of the business purpose of the trip but effectively ended it and his work day."

With this statement, we disagree.

The appeal board's somewhat emotional rationale fails to withstand critical analysis because it obscures the central point at issue. The appeal board focused almost entirely on the nature of decedent's deviation from his return business trip, and finding decedent's "bar hopping" to be unre-

lated to his employment concluded that his fatal injuries were also unrelated to his employment.

However, under the circumstances of this case the nature of the deviation has no relevant connection with decedent's untimely demise. Whether decedent spent eight hours, from the end of the seminar until resuming his trip home, in pursuit of "Bacchanalian pleasures", or instead spent those hours engaged in more laudable conduct, such as by improving his mind in the public library or redeeming his soul at a religious institution of his choice, has no relationship to the circumstances or cause of his death.

Our decision might, of necessity, be different if decedent died as a result of drunk driving, for then his arguably wrongful conduct, becoming drunk in the service of his employer, would be the proximate cause of his death and it is well established that under such circumstances compensation may be denied. *Crilly v Ballou,* 353 Mich 303, 327; 91 NW2d 493 (1958). Nor do we find the mere passage of time controlling or even particularly relevant. Except in unusual circumstances not here present, the timing of the trip bears no relationship to its hazards, and it is the general hazards which allow liability for injury to be imposed on the employer in the first place. *Stark v L E Myers Co,* 58 Mich App 439, 443; 228 NW2d 411 (1975), *lv den,* 394 Mich 814.

Under the rule of *Stark, supra,* because decedent was engaged in a trip of special benefit to his employer, it is his employer who must bear the risk for one complete round trip. Deviations from the business route may or may not be covered, a question we do not here decide, but upon resumption of the trip out or the return trip the employer's liability recommences. Again, if decedent had

met his death in one of the places he visited we might well hold that plaintiff had no right to compensation.

The present case can properly be viewed as one in which decedent was simply a person who had the misfortune to be in the wrong place at the wrong time. *Berry v Sugar Notch,* 191 Pa 345; 43 A 240 (1899). The fact decedent was killed at 3 a.m. was mere happenstance, for he might just as well have been the victim of a shotgun-wielding felon at 6 p.m. if he had returned home in the most expeditious possible manner. Analytically, decedent was the victim of a "blind agency of death", and he may as well have been struck by a meteorite, a bolt of lighting, or a tornado. If in fact decedent was on his way home at the time of his death, he was "in the course of his employment", *Stark v L E Myers Co, supra,* and any injury inflicted upon him by an external force or agency would be compensable, for as a matter of law his employment would be the occasion of his injury. *Whetro v Awkerman,* 383 Mich 235; 174 NW2d 783; 42 ALR3d 375 (1970).

To be sure, a detour or deviation grossly disproportionate in time or distance to the business portion of the trip might in a proper case be deemed a disqualification for compensation benefits. See *Thomas v Certified Refrigeration, Inc,* 392 Mich 623, 635; 221 NW2d 378 (1974), *Beaudry v Watkins,* 191 Mich 445; 158 NW 16 (1916). Here, however, it could only be expected that decedent would return to his home or his office in time to begin the next working day; whether decedent opted to stay overnight in Grand Rapids or return directly to Muskegon was of no concern to his employer, since his workday was completed by the time the seminar ended. We reiterate that it was

not the hazards of traffic or of the time of day when decedent resumed his trip home that proximately caused his death, or even contributed thereto.

The appeal board therefore erred in declaring plaintiff's decedent disqualified from benefits by virtue of the nature and length of his deviation where, as here, neither the passage of time nor the nature of the deviation proximately contributed to decedent's fatal wound. We are unable to discern from the opinion of the board whether it found as fact that decedent was returning home at the time he was shot. The referee did clearly so find and the exhibits appear to support his conclusion. However we cannot take as a finding of fact the language in the appeal board opinion that "he perhaps started home by a circuitous route" or that "he supposedly started home" and elevate these phrases to a factual finding. By law, Const 1963, art 6, § 28, it is the appeal board, not this Court, which must draw conclusions from the evidence of record, subject to limited judicial review. Consequently, we remand this cause to the Workmen's Compensation Appeal Board for further proceedings consistent with this opinion, to be supported by statement of law and facts supporting its ultimate conclusion. *McClary v Wagoner,* 16 Mich App 326; 167 NW2d 800 (1969). We do not retain jurisdiction.