HOWARD v. CITY OF DETROIT.

DECISION OF THE COURT.

1. WORKMEN'S COMPENSATION—SPLIT SHIFT—INJURY EN ROUTE BACK TO WORK—DEPENDENCY.

Denial of workmen's compensation appeal board of an award to employee for injuries sustained in an accident on the city street while returning to work during an elapsed break in his shift is reversed and cause is remanded for further hearing to determine dependency.

2. SAME—FINDINGS OF FACT BY WORKMEN'S COMPENSATION APPEAL BOARD.

Findings of fact, by the workmen's compensation appeal board as distinguished from ultimate conclusions, are binding upon the Supreme Court, absent fraud (CL 1948, § 413.12).

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 58 Am Jur, Workmen's Compensation § 537.
[2, 6] 58 Am Jur, Workmen's Compensation § 530 et seq.
[3, 5] 58 Am Jur, Workmen's Compensation §§ 217, 221, 222, 224.
[7] 5 Am Jur 2d, Appeal and Error § 902.

3. SAME—SPLIT SHIFT—INJURY EN ROUTE BACK TO WORK.

Bus driver on split shift for the day who had driven his bus for a period of time in the morning and was en route for remainder of his work in afternoon when injured in an automobile accident 10 minutes before due for duty *held,* entitled to workmen's compensation for such injuries, because the irregular pattern of working time due to the nature of defendant's business placed him where he was at the time of injury.

4. SAME—FURTHER HEARING—DEPENDENCY.

Further hearing to determine dependency and benefits to which plaintiff may be entitled is granted upon reversal of workmen's compensation appeal board's order denying benefits.

SEPARATE OPINION.

BLACK, J.

5. WORKMEN'S COMPENSATION—EN ROUTE TO OR FROM WORK—PROXIMATE CAUSE.

*Generally, an injury to an employee while merely on his way to or from work, without any causal connection between his injury and his work, and without any duty to perform at that time for the employer does not arise out of and in the course of employment, hence, is not compensable under the workmen's compensation act.*

6. SAME—FINDING OF WORKMEN'S COMPENSATION APPEAL BOARD— EVIDENCE—SPLIT SHIFT—BUS DRIVER.

*Finding of workmen's compensation appeal board that there was no connection between plaintiff's injury which occurred as a result of an automobile accident some 10 minutes before he was to report for duty in second and afternoon portion of split shift as defendant employer's bus driver held, a finding of fact supported by evidence and not subject to disturbance by Supreme Court on review by certiorari to the board (CL 1948, § 413.12).*

7. SAME—REMAND FOR REDETERMINATION—DEADLOCK.

*Proceeding to recover workmen's compensation by employee who was injured while en route back to work as a result of automobile accident some 10 minutes before he was to report for duty*

*on second portion of split shift is remanded to workmen's compensation appeal board to reconsider and decide anew with the right to take and consider additional proof before making such new decision, thereby breaking a 4-4 deadlock in the Supreme Court.*

DISSENTING OPINION.
DETHMERS and KELLY, JJ.

*See headnote 6.*

Appeal from Workmen's Compensation Appeal Board. Submitted June 9, 1965. (Calendar No. 6, Docket No. 50,803.) Decided February 8, 1966.

Tommie Howard presented his claim for compensation against City of Detroit, a municipal corporation, department of street railways, for injuries incurred as he was returning to work during an elapsed break in his shift. Award denied. Plaintiff appeals. Reversed and remanded with instructions.

*Atlas, Rowe & Talon (Seymour H. Rowe, of counsel), for plaintiff.*

*Manuel Zechman* and *Don D. Cramer,* for defendant.

O'HARA, J. On our leave granted, plaintiff appealed a denial of benefits under the workmen's compensation act.[1] The two-to-one divided opinion held his accidental injury did not arise out of and in the course of his employment.

The majority view is succinctly stated as follows:

"The Supreme Court has consistently held that, as a general rule, an injury to an employee while merely

[1] PA 1912 (1st Ex Sess), No 10, as amended as of October 31, 1960 (CL 1948 and CLS 1961, § 411.1 *et seq.* [Stat Ann 1960 Rev § 17.141 *et seq.*]).

on his way to or from work, without any causal connection between his injury and his work, and without any duty to perform at that time for the employer, does not arise out of and in the course of the employment."

Contra, the dissenting opinion, while recognizing the above-quoted general rule, points to the many exceptions thereto which have been recognized,[2] and applies the test of exceptionality to this case and its particular facts.  We quote:

"I agree with my Brother's statement that the Supreme Court has consistently held that as a general rule an injury to an employee while merely on his way to and from work without any causal connection between his injury and his work and without any duty to perform at that time for the employer the injury does not arise out of and in the course of the employment.  The Supreme Court, however, recognizes many exceptions to this general rule."

Our scope of review is restricted.  The findings of fact of the workmen's compensation appeal board are binding upon us absent fraud.[3]

We are not here, however, concerned with evidentiary facts, their weight or their credibility.  We are

---

[2] *Kunze* v. *Detroit Shade Tree Co.,* 192 Mich 435 (LRA 1917A, 252); *Haller* v. *City of Lansing,* 195 Mich 753 (LRA 1918A, 218); *Punches* v. *American Box Board Co.,* 216 Mich 342; *Clifton* v. *Kroger Grocery & Baking Co.,* 217 Mich 462; *Brink* v. *J. W. Wells Lumber Co.,* 229 Mich 35; *Stockley* v. *School District No. 1 of Portage Township,* 231 Mich 523 (24 NCCA 493); *Favorite* v. *Kalamazoo State Hospital,* 238 Mich 566; *Bisdom* v. *Kerbrat,* 251 Mich 316; *Merriman* v. *Manning, Maxwell & Moore,* 251 Mich 318; *Wilhelm* v. *Angell, Wilhelm & Shreve,* 252 Mich 648; *Spero* v. *Heagany & Draper Co.,* 256 Mich 403; *Wearner* v. *West Michigan Conference of Seventh Day Adventists,* 260 Mich 540; *Konopka* v. *Jackson County Road Commission,* 270 Mich 174 (97 ALR 552); *Mann* v. *Board of Education of City of Detroit,* 266 Mich 271; *Babl* v. *Pere Marquette R. Co.,* 272 Mich 184; *Appleford* v. *Kimmel,* 297 Mich 8; *Weaver* v. *General Motors Corporation,* 330 Mich 404; *Ditch* v. *General Motors Corporation,* 345 Mich 178; *Freiborg* v. *Chrysler Corporation,* 350 Mich 104; and *Dyer* v. *Sears, Roebuck & Co.,* 350 Mich 92.  (Cases compiled in the dissenting appeal board opinion.)

[3] CL 1948, § 413.12 (Stat Ann 1960 Rev § 17.186).

concerned with the ultimate conclusion. This finding is, in reality, a legal conclusion based upon the record by application thereto of legal principles established by precedent opinions of this Court. This distinction is noted and recognized in *Curtis Company* v. *Commissioner of Internal Revenue* (CA 3), 232 F2d 167, 170:

"There is no dispute as to the evidentiary facts. The only question is whether on these facts the conclusion is supportable."

Again in *Lehmann* v. *Acheson,* 206 F2d 592, 594, the third circuit court of appeals in reviewing the district court's judgment, observed:

"The district court[4] found as a *fact* that expatriation had taken place. With respect to that finding it must immediately be noted that it was in the nature of an *ultimate finding of fact* and on that score it is well settled that such a finding is but a legal inference from other facts and as such is subject to review free of the restraining impact of the so-called 'clearly erroneous' rule applicable to ordinary findings of fact by the trial court." (Emphasis supplied.)

The same principle is applicable to our review of the ultimate finding or conclusion, by either name, of the workmen's compensation appeal board.

Defendant, in its brief, properly and helpfully accepts plaintiff's statement of facts with "minor exceptions" which we have noted. Thus we need not discuss variations in specifics and we may proceed to the factual background necessary to an understanding of our disposition.

Plaintiff was a bus driver employed by the defendant in its municipally operated public transportation system. He did not drive the same route or "run" every day. On some days he drove what is referred

---

[4] *Lehmann* v. *Acheson* (ED Pa), 109 F Supp 751.—REPORTER.

to in the record as a "straight run." On other days he was assigned, at the option of defendant, for more efficient operation to a "swing run." When assigned to a "straight run" he drove continuously from the beginning to the end of his work day. However, when driving a "swing run" he would drive for a period of several hours, and he was then subject to a nondriving interval called "spread time" or "swing time." This "spread time" varied from 23 minutes to more than 5 hours.

On the day involved, plaintiff drove his bus from 7:05 a.m. to 8:45 a.m. He was to resume driving at 1:28 p.m. and was scheduled to drive until 7:54 p.m. During the nondriving interval hereinbefore specified, plaintiff left the terminal on personal business. He completed it and proceeded to his home where he ate his lunch. The record establishes that on the employer's premises there was an automatic vending machine containing soup, coffee, milk, and soft drinks, and that there was a restaurant in the corner of the terminal building. After his lunch he left and started back to the terminal. En route, to resume driving at about 1:18 p.m., he was involved in an automobile accident and injured.

It is the difference between plaintiff's conduct pattern as affected by his work schedule on "regular run days" and "swing run days" that gives rise to this appeal. The contrasting view of the appeal board members is best shown by their respective opinions. Concerning this circumstance, the minority opinion queries first and then answers:

"Our task here is to determine whether the peculiar nature of the 'swing run' to which plaintiff was assigned is a special kind of a contract of hire which would give this employee the protection of the compensation act while he complies with the requirements of his particular employment. I am persuaded

that plaintiff's claim comes within the exception to the general rule.

"Plaintiff had no regular schedule of hours. He was assigned from day to day to the numerous swing runs necessary in the operation of defendant's business. On the day of injury, plaintiff's assignment required that he drive a bus from 7:05 a.m. to 8:45 a.m. and then again from 1:25 p.m. to 7:54 p.m. He was injured at 1:18 p.m. while proceeding to the 1:28 [*sic*] p.m. assignment. It is apparent that the injury occurred within a reasonable time before his second stint of working hours and while he was going to his assigned tasks. On the Van Dyke run where plaintiff was assigned at the time of his injury, there were 10 drivers that worked straight through from the time they arrived at work until their day's duties were completed. There were 14 drivers who worked split shifts. The time lapse between the actual driving hours varied depending upon the particular assignment. Defendant's exhibit No. 1 discloses time variations ranging from 23 minutes to more than 5 hours. Those working during a period exceeding 11 hours each day received overtime even though they may have actually worked less than 8 hours. In addition, each operator was allowed 30 minutes pay each day of the period when he was to check out his day's receipts and transfers. He also received 8 minutes of travel time which represented the period from the time he left his bus until he reached defendant's terminal.   *   *   *

"Is the person who is off only 23 minutes able to utilize this period of time as he personally desires or is his use of this time restricted by the very nature of his work assignment? Is there a legal distinction to be made between the person who is off duty only a few minutes and a person who is off duty for an hour or more? Because of the nature of the employment, each are subjected to hazards which they would not have encountered in the ordinary going to and from work. The person who has only 23 minutes may not be able to leave the employer's property

because of his employment assignment. On the other hand, the person who has enough time between his actual working duties to leave the immediate premises is then subjected to street hazards to a degree and in a manner far different than that found in employment in general."

We are not unmindful that no incident of plaintiff's employment *required* him in an absolute sense to leave the terminal during the 5-hour interval. If he did choose to leave he was certainly not required to travel by automobile. Why not then, asks defendant, under *Baas* v. *Society for Christian Instruction*, 371 Mich 622[5] (the concurrence of O'HARA and SMITH, JJ.) was not the automobile "a stranger to the issues ?"

In *Baas,* plaintiff there, as the "regular run" drivers here, had no extended break in her hours of duty. She taught her normal classroom day, with its normal lunch time period. Defendant concedes, the "dual purpose" principle contended for in the dissent in *Baas* is not involved here. Plaintiff was about his own private affairs. The distinguishing point is plaintiff would not have been required by his work schedule to accept an irregular pattern of working time had it not been that the nature of defendant's business and defendant's contract of employment required him to do so. It is not to the point that plaintiff was injured in an automobile collision. It is to the point that a condition of his employment required plaintiff to begin his work day at 7 a.m., work till 8:45 a.m., interrupt his work for 5 hours and resume work again at 1:28 p.m. This fact of his employment contract subjected plaintiff to a situation entirely different in nature from that to which the "regular run" drivers on the same run

---

[5] This holding was not dispositive in *Baas* but defendant urges· that the reasoning of the concurrence is applicable. The dissent was. based on the "dual purpose" doctrine.

(Van Dyke) were subjected. For this reason we believe the majority opinion erred in the ultimate conclusion that plaintiff was "merely on his way to [or from] work." This is precisely what plaintiff was not doing. As we noted in a somewhat, though not totally, similar case:[6]

"When Bisdom left at 4:30 p.m. his day's work was not finished. He was not going home for the night, but only to eat his dinner and * * * while on his way home, met with an automobile accident * * * . He was acting within the course of his employment."

In the case cited, plaintiff was en route to his dinner, rather than returning thereafter, but the special circumstance was created by a specific requirement of his employment on that day. It resulted from a direct order from his employer and had no application to any other day. The essential point abides. The circumstance was a deviation from his regular normal working schedule. It was for his employer's benefit and was an incident of his contract of employment. Thus it was that a circumstance of his employment placed him where he was at the time of his accidental injury. So too, it was a circumstance of his employment that placed plaintiff in this case where he was when he was accidentally injured.

In this case, also, plaintiff had not finished his day's work. We agree with the dissenting opinion that the facts presented in *Bisdom* are sufficiently analogous to warrant its application here.

We conclude that the majority of the appeal board was in error in its ultimate conclusion that amounted to an error in law.

The order of the appeal board denying benefits is vacated. The case is remanded with instructions to

---

[6] *Bisdom* v. *Kerbrat*, 251 Mich 316, 317.

enter an order awarding plaintiff the benefits to which he is entitled under the proofs of dependency as found by the board. If further hearing to determine this fact is required, such further hearing is authorized. Plaintiff may tax costs.

Souris, Smith, and Adams, JJ., concurred with O'Hara, J.

T. M. Kavanagh, C. J. *(concurring in reversal).* The Court at a previous conference split—four members being for affirmance and four for reversal. I voted for affirmance on the theory that this case should be controlled by a reversal of the majority holding in *Baas* v. *Society for Christian Instruction,* 371 Mich 622. Since a majority of this Court is not presently willing to reverse *Baas,* I conclude that I should break the deadlock by concurring in the opinion of Justice O'Hara. I, therefore, vote with Justice O'Hara, for the reasons given by him, to vacate the order of the appeal board denying benefits, the case to be remanded with instructions to enter an order awarding plaintiff the benefits to which he is entitled under the proofs of dependency as found by the appeal board. If a further hearing to determine this fact is necessary, such further hearing is authorized.

Black, J. *(concurring in remand).* *Baas* v. *Society for Christian Instruction,* 371 Mich 622, *Turner* v. *Consumers Power Company,* 376 Mich 188, and now Howard, have brought up records disclosing that the appeal board, likened unto a jury, could in each instance have found controlling facts and inferences either way. The board in all three cases was consequently possessed of plenary authority to enter the respective orders awarding or denying workmen's compensation. Which is to say

precisely that in no one of the three cases did the board reversibly err.

This is the "any evidence" rule which limits the scope of judicial review under CL 1948, § 413.12 (Stat Ann 1960 Rev § 17.186). For discussion and application of it, see recent *Coates* v. *Continental Motors Corporation,* 373 Mich 461.

In *Baas* this Court erred when it refused to recognize the board's aforesaid authority as fact finder. There a bare majority reversed the board's award despite finding of the board, attested unanimously upon adequate as well as persuasive proof, that the purpose of Mrs. Baas' trip back to school was definitely "twofold." For the appeal board's said finding, see *Baas* at 632.

With like evidentiary support the board found, in *Turner,* "that there was no necessity for decedent to do any work at home, and further that defendant employer neither expected nor authorized him to do so." (*Turner* at 191.) The Court did not, therefore, err when it affirmed the appeal board's denial of compensation as claimed by Mrs. Turner.

Now, in this case of Howard, the record shows that the appeal board found "no reason in the factual situation presented in this cause to make an exception to this sound general rule of law." Such "general" rule was related by the board this way:

"The Supreme Court has consistently held that, as a general rule, an injury to an employee while merely on his way to or from work, without any causal connection between his injury and his work, and without any duty to perform at that time for the employer, does not arise out of and in the course of employment. *Lipinski* v. *Sutton Sales Co.,* 220 Mich 647; *Stocker* v. *Southfield Co.,* 244 Mich 13; *Dent* v. *Ford Motor Co.,* 275 Mich 39. See, also, 'The Law of Workmen's Compensation' by Arthur Larson Vol. I, subparagraph 15, page 194 [195]."

If this Court could perceive no evidence in *Baas,* none that is, tending to support the appeal board's finding of "out of and in the course of" injury, then within its fact-finding powers the board was surely entitled to find that Mr. Howard had failed to prove any more than that he was "merely" on his way back to work. Both injuries—Baas and Howard—were sustained while the employee was on his (her) way to work, *traveling by automobile.* Schoolteacher Baas was carrying with her certain school paperwork which (with concurrence of her employer) she had done at home; *paperwork which was requisite to the day's task and had to be gotten to school that morning.* The board expressly so found. No such work had been done by Mr. Howard. He was carrying nothing, as he drove his car back to work, which was requisite to resumption of duty by him for the defendant employer. Too, he was carrying nothing of value belonging to his employer and nothing needful to or for the employer's business. And no claim in any such regard was or is made by him.

There is no way—plausible or implausible—to duck around *Baas'* judicial error. The case should be reheard and set right, if for no other reason than that of its continuing impact below upon all present and future cases of alleged dual purpose travel *by automobile* (see quotation from *Turner* below). Until it is, one can hardly blame the appeal board for pursuing *Baas* as indicative of what this Court wants done; for finding in these ever controversial "going and coming" cases, the travel being by *one's own automobile,* that the employee has failed to sustain his burden of proving to the satisfaction of the board a case of causal connection between employment and injury.[1]

---

[1] If it was right to say *as a matter of law* (*Baas* at 655) that Mrs. Baas' "accidental injury arose out of automobile travel, not out

The board's view of *Baas* is now of record. It is quite understandable. I quote it from recent *Turner* v. *Consumers Power Company,* 376 Mich 188, 192, 193:

"While this matter has been pending before us our Supreme Court, in a 5-3 decision, reversed an award of compensation to a school teacher who was seriously injured while on her way to school. See *Baas* v. *Society for Christian Instruction,* 371 Mich 622. The majority held that the decision in *Murphy* v. *Flint Board of Education,* 314 Mich 226, another school teacher case, was controlling of the issue before it. Justice BLACK wrote not only a vigorous dissent but followed up with a supplemental opinion of like tenor. The majority and the dissenting opinions [of *Baas*] do not separate on the fact that in either the *Murphy Case, supra,* or the *Baas Case* there was a lack of knowledge or expectation of performance of duties at home but rather upon the question as to whether the traveling done by these plaintiffs truly was a hazard of the employment."

I turn directly to this case. As I read its majority opinion, the board has found that Mr. Howard was "merely" on his way to work and that there was no "causal connection between his injury and his work." Such negative findings are conclusive upon the judiciary no matter what our finding of facts might be were we entitled to act as factfinders in workmen's compensation cases.

The analogy of suits for tort comes into play here. The question of causal connection is usually, if not always, a question of fact (*Berry* v. *Visser,* 354 Mich 38; *Barnebee* v. *Spence Brothers,* 367 Mich 46; *Dismukes* v. *Michigan Express, Inc.,* 368 Mich 197). In workmen's compensation cases the very first ques-

of the work she was required to do at home.", then the fact-finding appeal board was possessed of right to find that Mr. Howard's injury, arising as it did in the course of automobile travel, was causally disconnected with his employment.

tion, whether the claimant's injury arose "out of and in the course of" employment, is correlatively similar since it arises invariably upon proof of circumstances rather than direct proof. That is the case here. The testified circumstances do not establish, either way as a matter of law, that mutual intention of employer and employee which determines in "going and coming"—or "twofold purpose" —cases that the trip was or was not within the so-called ambit of employment. Such intention must be ascertained by resort to the process of drawing permissible inferences from testified facts. That is the job of appointed fact finders, not Supreme Court Justices.

The question of causal connection is controlling in this case. It was resolved below against the plaintiff. He, bearing the burden of factual persuasion before the board,[2] failed to convince a majority of its members. Since this Court does not hear and decide *de novo* on certiorari to the board, affirmance is in order.

SUPPLEMENT (December 1, 1965):

The Court having split November 2d, four members standing for affirmance and four for reversal, someone should break the deadlock. I therefore rise to vote for remand with instruction that the appeal board reconsider and decide anew in the light of Justice O'HARA's writing for this case of Howard, writing which surely casts doubt on the value as precedent of the separate writings for reversal of the *Baas Case.* The appeal board should, if such is deemed advisable by its members, take and consider additional proof before making such new decision.

---

[2] From as far back as *McCoy* v. *Michigan Screw Co.,* 180 Mich 454, 458, this Court has consistently held that "The burden of furnishing evidence from which the inference can be legitimately drawn that the injury arose 'out of and in the course of his employment' rests upon the claimant." See the list of cases cited under section 249, 19 Callaghan's Michigan Digest, Workmen's Compensation, pp 149, 150.

The practice employed here, of breaking a four-four deadlock, is the same as was employed by the writer in the *Halfacre Case* (*Halfacre* v. *Paragon Bridge & Steel Company,* 368 Mich 366, 389).

Dethmers, J. (*dissenting*). I am in full accord with the concluding paragraph in the main portion of Mr. Justice Black's opinion in this case, appearing before that part subsequently added and denominated "Supplement", which reads as follows:

"The question of causal connection is controlling in this case. It was resolved below against the plaintiff. He, bearing the burden of factual persuasion before the board, failed to convince a majority of its members. Since this Court does not hear and decide *de novo* on certiorari to the board, affirmance is in order."

In no wise do I share in Justice Black's criticisms of the majority opinion, written by Mr. Justice Kelly, in *Baas* v. *Society for Christian Instruction,* 371 Mich 622, which I signed when it was presented because I agreed with it then. I continue to be well content with it now.

Accordingly, I am for affirmance but oppose remand.

Kelly, J., concurred with Dethmers, J.