PAPPAS v SPORT SERVICES, INC.

1. WORKMEN'S COMPENSATION—TRAVEL TIME—CAUSE OF EMPLOYMENT
—NEXUS—VARIABLES—COMPENSABILITY.

An injury sustained while traveling to or from work is not compensable under workmen's compensation unless there is established a sufficient nexus between the employment and the injury; four variables to consider when assessing the sufficiency of the nexus are (1) whether the employer paid for or furnished employee transportation, (2) whether the injury occurred during or between working hours, (3) whether the employer derived a special benefit from the employee's activities at the time of the injury, and (4) whether the employment subjected the employee to excessive exposure to traffic risks.

2. WORKMEN'S COMPENSATION—TRAVEL TIME—CAUSE OF EMPLOYMENT
—TRAVEL ALLOWANCE—GENERAL RAISE—REQUIREMENTS OF JOB
—BENEFIT TO EMPLOYER—SPECIAL ARRANGEMENT.

Injuries incurred while traveling may be compensable under workmen's compensation when an employee is given a travel allowance to compensate for demands outside of the ordinary to fulfill the requirements of the job; but a general salary increase which is partially based on increased inconvenience due to additional travel, and which results in no particular benefit to the employer, is not a special arrangement for travel expenses which might make such injuries compensable under the law.

3. WORKMEN'S COMPENSATION—TRAVEL TIME—SPECIAL FUNCTION—
COMMUTING REQUIREMENTS—COURSE OF EMPLOYMENT—OVER-
TIME.

An employee who is injured while returning home from a special overtime assignment but who was not required to commute to and from home solely to attend this function is not injured in the course of his employment; overtime work does not by itself warrant compensation for travel related injuries.

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 82 Am Jur 2d, Workmen's Compensation § 250.
Workmen's compensation; death or injury while traveling as arising out of and in the course of employment. 100 ALR 1053.

4. WORKMEN'S COMPENSATION—SOCIAL EVENTS—CAUSE OF EMPLOY-
MENT—OVERTIME—ALCOHOL—EXTRAORDINARY TRAVEL HAZ-
ARDS.

A 13-hour work day followed by an employee's voluntary attend-
ance at a social event where alcohol was consumed did not
result in extraordinary travel hazards for the employee on his
trip home where the employer did not expose the employee to
an excessive number of commutations, the plaintiff did not
remain on the job, the overtime work was not so long as to
increase substantially the employee's fatigue, and the employee
was not required to attend the party nor imbibe while there.

Appeal from the Workmen's Compensation Ap-
peal Board. Submitted December 8, 1975, at De-
troit. (Docket No. 23212.) Decided April 6, 1976.
Leave to appeal denied, 397 Mich 825.

Claim by Louis Pappas against Sport Services,
Inc., and Continental Casualty for workmen's com-
pensation benefits. Benefits denied. Plaintiff ap-
peals. Affirmed.

*Frank R. Langton & Associates* (by *Cynthia J.
Boyer)*, for plaintiff.

*Plunkett, Cooney, Rutt, Watters, Stanczyk, &
Pedersen* (by *H. William Reising* and *Jeanette A.
Paskin)*, for defendants.

Before: V. J. BRENNAN, P. J., and R. M. MAHER
and G. W. BRITTEN,* JJ.

G. W. BRITTEN, J. Plaintiff, denied workmen's
compensation benefits by both the hearing referee
and the Workmen's Compensation Appeal Board,
asks this Court to rule that he is entitled to
compensation for injuries suffered in an automo-
bile accident of August 2, 1970. We decline plain-
tiff's invitation to extend an employer's liability

---

* Circuit judge, sitting on the Court of Appeals by assignment.

for travel-related injuries and we affirm the administrative decisions below.

Plaintiff was a cook employed by defendant, a concessionaire at Detroit area race tracks. When first hired as a full time employee at the Hazel Park race track, located five minutes from his house, plaintiff received a $165 per week salary. His overtime pay averaged $25 per week. When the Hazel Park racing season closed, defendant asked plaintiff to work at its Northville Downs restaurant for the 60-day racing season there. Plaintiff, reluctant to undertake the 50-mile round trip without an increase in pay and convinced that his labors were worth more than $190 per week, negotiated a new salary of $225 per week. Although no sum was specifically allotted as recompense for the increased travel burden, testimony indicated that the increased salary was at least partially attributable to the increased commuting distance.

On August 1, 1970, plaintiff worked exceptionally long hours, from noon until 1 a.m. of the next day. During the day, in addition to his regular duties, he prepared food, some donated by defendant, for a race track employees party that was to be held off the premises of the employer in the early morning hours of August 2. Defendant gave its permission to use company trays and tableware for serving the food at the festivities, and indicated that, if plaintiff were to attend the party, he was to look after defendant's equipment. Plaintiff attended the community party, arriving at 1 a.m. Plaintiff cleaned the equipment and made sure that it was loaded in a car for return to defendant. Plaintiff left the party at 3 a.m. for the 25-mile drive home. Plaintiff fell asleep at the wheel, ran into a highway abutment, and suffered extensive

injuries. He sought, and was denied, workmen's compensation.

Plaintiff advances three theories of eligibility for workmen's compensation: (1) because plaintiff received extra compensation for the increased commuting distance, his highway travel was part of his work and hence his injury arose out of and was in the course of employment; (2) because plaintiff was furthering his employer's interests and was performing a special overtime assignment in attending the community party, his subsequent homeward trip must be considered as arising out of and in the course of employment; and (3) the lengthy working day, combined with the attendance at and participation in the community party, markedly increased the plaintiff's fatigue, making the trip home more hazardous, and that the increased hazard arose out of and was in the course of employment.

We must approach these three theories with a preliminary recognition of the well-settled principle that injuries sustained while going to and from work are not compensable. *E.g., Dent v Ford Motor Co,* 275 Mich 39; 265 NW 518 (1936). However, as was pointed out in *Stark v L E Myers Co,* 58 Mich App 439, 442–443; 228 NW2d 411 (1975):

"This general rule however has been repeatedly riddled with exceptions to the extent that it seems to have become an exception to the exceptions. From this consequent erosion of the general rule, it would appear that there is arising through evolution a new rule which compensates where 'there is a sufficient nexus between the employment and the injury' so that it may be said that the injury 'was a circumstance of the employment'." (Citations omitted.)

The *Stark* opinion listed four variables to consider in assessing the "sufficiency of the nexus":

"1. Whether employer paid for or furnished employee transportation, * * * .
"2. Whether the injury occurred during or between working hours, * * * .
"3. Whether the employer derived a special benefit from the employee's activities at the time of the injury, * * * .
"4. Whether the employment subjected the employee to excessive exposure to traffic risks, * * * ." (Citations omitted.) 58 Mich App 439, 443.

With these variables in mind, we turn to plaintiff's first theory of recovery. There is authority in Michigan for the proposition that injuries incurred while travelling are compensable when the employee is given a travel allowance. *Lemanski v Frimberger Co*, 31 Mich App 285; 187 NW2d 498 (1971). We find the legal analysis in the *Lemanski* opinion quite sparse and we are hesitant to rely on it without some further thought.

The *Lemanski* Court merely ratified the determination of the Workmen's Compensation Appeal Board that an employee receiving a ten-cents-per-mile travel allowance was within the course of employment. The Court, apparently concluding that review was limited because the question was a factual one,[1] cited with approval an excerpt from the appeal board opinion:

" 'Defendant's position is that this is merely a going to and from work situation and therefore excluded from coverage. This board does not agree. The payment of mileage pursuant to agreement is obviously intended to

---

[1] A Workmen's Compensation Appeal Board determination that auto accident injuries arose out of and were in the course of employment is not, as *Lemanski v Frimberger Co,* 31 Mich App 285; 187 NW2d 498 (1971), might suggest, determinative. Board findings of fact are binding, but a decision that an employee receiving travel allowances is entitled to compensation for travel injuries is not a factual finding. In this case, that decision of entitlement is the ultimate conclusion. As such, it is clearly reviewable by this Court. *See Howard v Detroit,* 377 Mich 102, 105–106; 139 NW2d 677 (1966).

cover a special situation entailing more than a mere trip between home and shop and is a recognition that this employment has placed demands outside the ordinary on plaintiff in order to fulfill the requirements of his job for defendant, that highway travel is a necessary and routine part of the work assigned.' " 31 Mich App 285, 286.

In the present case, the majority of the appeal board apparently concluded that plaintiff was not paid a specific sum for mileage, but was given a salary increase partially because of the increased inconvenience of travel.[2] As the nature of this travel allowance is much different than that in *Lemanski,* we need not rely on *Lemanski.* We are compelled to analyze the competing policies on the issue of compensation for commuting injuries when the employee has received a salary increase that is at least partially attributable to increased travel time.

Other than *Lemanski,* there do not seem to be any Michigan cases close to this issue. A number of cases have awarded compensation for travel accidents where the employer has provided the employee's transportation rather than a cash transfer for travel. *Konopka v Jackson County Road Comm,* 270 Mich 174; 258 NW 429 (1935), and *Chrysler v Blue Arrow Transport Lines* 295 Mich 606; 295 NW 331 (1940), do not involve a travel allowance but concern instead an express or implied undertaking by the employer to provide transportation. As was stated in *Chrysler:*

[2] There were three opinions filed by the three board members—two denying compensation and one in favor. The dissenter clearly concluded that travel was compensated. The opinions of the two majority members are somewhat ambiguous on this point. Our readings of their opinions and the transcript of the hearing suggest that the raise in salary upon the move in operations to Northville Downs was partially to induce plaintiff to travel the extra distance and partially attributable to merit.

"While generally speaking, normal traffic hazards encountered while traveling to and from the place of work are deemed to be risks common to all and are not connected with the employment status, industry must bear the loss from injuries sustained from such common risks when the task subjects the worker to 'excessive exposure to the common risk' * * * . In the case before us, *travel itself was the employment,* imposing abnormal risk of travel mishaps, not only while driving a loaded truck but in returning to the starting point of a journey after the allowed free time." (Emphasis added.) (Citations omitted.) 295 Mich 606, 609.

We do not find *Lemanski* or the provision of transportation cases controlling in our consideration of the particular question plaintiff poses. Where the employer provides a vehicle, guarantees transportation, reimburses identifiable travel expenses, or provides an identifiable sum for travel time, it is probable that the employer has contracted for the employee's travel and that, as the *Chrysler* case notes, the travel itself is employment. However, where the employer merely gives a salary increase to an employee to induce him to work at a more distant job site, there is a lesser probability that the employer has contracted for travel. The defendant in this case simply made the position more attractive financially by increasing the salary. The employer received no benefit from the employee's travel other than the benefit all employers receive by their employees' presence at work.

The plaintiff was a cook, not a travelling salesman, a truck driver, or a journeyman worker moving from site to site. His employment at Northville for two months is of sufficient duration to remove his case from one of the possible bases for the *Lemanski* decision, for, unlike *Lemanski,*

the plaintiff's position did not require extraordinary travelling because of turnover in job sites.[3]

We do not believe that plaintiff's increased salary can be attributed to the employer's contracting for the plaintiff's travel. The employer had no control over, nor particular desire for, plaintiff's travel. The extra money paid merely amounts to additional compensation necessary to attract plaintiff's services, rather than a special arrangement for travel expenses.[4] Because there was no special arrangement for travel expenses or wages, and because the travel was of no particular benefit to the employer, plaintiff's first theory fails.[5]

Plaintiff's second theory of recovery is more easily dismissed. Assuming, without deciding, that plaintiff was furthering his employer's interests while attending the race track community festivities, this task ended when the party ended. Had plaintiff been injured while attending the party, or while returning the employer's trays and silverware, we would face different questions.[6] Had the

---

[3] In *Stark v L E Myers Co*, 58 Mich App 439, 442–443; 228 NW2d 411 (1975), compensation was denied an employee injured in a traffic accident who faced a longer commutation than the present plaintiff and whose job involved frequent changes in job sites. However, *Stark* does not involve the particular element of an alleged travel allowance. *Stark's* relevance in considering present plaintiff's eligibility for compensation under plaintiff's first theory is limited to its first holding that an employer receives no particular benefits from an employee's long commutes to frequently changing job sites. This observation is useful in assessing whether or not the present plaintiff was in fact in the employ of defendant while driving to and from work. The observation is relevant in our consideration of the significance of the raise in salary.

[4] *Accord, Watkins v Cowenhoven*, 90 NJ Super 17; 216 A2d 15 (1965). *See also, Barney v Industrial Comm*, 29 Utah 2d 179; 506 P2d 1271 (1973).

[5] For examples of travel that is of special benefit to the employer, *see Soncrant v Soncrant, Inc*, 59 Mich App 287; 229 NW2d 419 (1975), and *Thomas v Certified Refrigeration, Inc*, 392 Mich 623; 221 NW2d 378 (1974).

[6] Unlike *Hicks v General Motors Corp*, 66 Mich App 39; 238 NW2d 194 (1975), there is no claim here that the employer's location, by

plaintiff been required to commute to and from home solely to attend this social function, we would again face a different question. In the present case, we have only a delay in the plaintiff's trip home. The nature of the commutation was not changed by plaintiff's attendance at the party. He was merely driving home from overtime work; the fact of working overtime does not by itself warrant compensation. See *Phillips v Fitzhugh Motor Co,* 330 Mich 183; 46 NW2d 922 (1951), and *Lyons v Ford Motor Co,* 330 Mich 684; 48 NW2d 154 (1951).

Plaintiff's final theory of recovery is that the employer's requirement of 13 hours of regular work and the plaintiff's attendance at the social event, where alcohol was consumed, combined to increase substantially the hazards of travel. Because the employment created hazardous travel, the injury on the trip home is argued to arise out of and be in the course of employment. There are Michigan cases that hold an employer liable for an employee's travel injuries if the employer's business subjects the employee to extraordinary travel hazards. *E.g., Howard v Detroit,* 377 Mich 102; 139 NW2d 677 (1966).

In *Howard,* a bus driver working a split shift was injured in an accident while en route from his home to the terminal to commence the second swing. The Court awarded compensation because the split shifts exposed the employee to more than the ordinary number of commutes and because the employee had not finished his day's work. These factors are not found here—the defendant did not expose plaintiff to an excessive number of commutations, for the plaintiff still faced only one drive

---

itself, was particularly hazardous or necessarily required an unusually hazardous trip home.

home. Moreover, as we have noted, plaintiff's working day ended with the completion of the party, if not sooner. Unlike *Howard,* the plaintiff did not remain on the job.

All that defendant required of plaintiff was overtime work; we do not believe that this amount of overtime work was so great as to increase substantially plaintiff's fatigue.[7] The employee was not required to attend the party, nor to imbibe while there. The Workmen's Compensation Appeal Board's determination that there was no additional risk in driving home at a later hour is affirmed.

Plaintiff is not entitled to workmen's compensation. We affirm. No costs, a public question being involved.

R. M. MAHER, J. did not participate.

---

[7] Plaintiff worked 13 regular hours and attended the party for two hours. His normal working day was eight hours. Plaintiff therefore worked overtime of either five or seven hours, depending on the treatment given the social event. In either case, we do not view this as likely to cause a hazardous trip home. *But see Van Devander v Heller Electric Co,* 132 US App DC 40; 405 F2d 1108 (1968), where a divided court used an overtime fatigue analysis to reinstate compensation for injuries incurred by an employee who fell asleep while driving home. The employee in that case had worked 26 straight hours, with his duties including the installation of heavy electrical equipment. The Court there, as we do here, relied on the examiner's assessment of the increased risks incident to the particular overtime work required.