STOVER v MIDWEST TANK & FABRICATION COMPANY, INC.

Docket No. 77-3593. Submitted November 1, 1978, at Grand Rapids.—
Decided December 5, 1978. Leave to appeal denied, 406 Mich
926.

Arthur W. Stover was killed in an airplane crash, and his widow,
Kay M. Stover, filed for workmen's compensation benefits from
Midwest Tank & Fabrication Company, Inc., and its insurer,
Employers Mutual Casualty Company. At the time of his death,
Stover was president and majority stockholder of Midwest
Tank. He drew no salary and was not normally present at
Midwest's manufacturing site, but frequently met with the
company's salaried officers on weekends, when he commuted to
Michigan from Kentucky where he served as president of
another company. The airplane was leased in Midwest's name,
and the pilot was paid by Midwest, where he was employed in
other capacities when not piloting or maintaining the airplane.
Stover paid the aircraft expenses personally. On the weekend
of the crash, Stover was scheduled to attend a meeting at
which a major transaction by Midwest was to be finalized, and
there was testimony that Stover's attendance at the meeting
was essential. The administrative law judge denied workmen's
compensation benefits, and the Workmen's Compensation Ap-
peal Board reversed, holding that Stover's death did arise out
of and in the course of his employment, and granted benefits.
Midwest Tank and Employers Mutual appeal by leave granted,
alleging that the appeal board erred in finding that Stover was
an employee of Midwest Tank and that his death arose out of
and in the course of his employment. *Held:*

1. There is sufficient evidence to support the appeal board's
finding that Stover was an employee of Midwest Tank, and
therefore the Court is bound by the board's conclusion.

2. Generally, an employee traveling to or from work is not
covered by workmen's compensation, but there are exceptions
to the rule where it can be said that the injury was a circum-
stance of the employment. In this case there was sufficient
evidence to satisfy some of the relevant considerations to be

REFERENCES FOR POINTS IN HEADNOTES

[1] 82 Am Jur 2d, Workmen's Compensation §§ 552, 565-569, 631.
[2-4] 82 Am Jur 2d, Workmen's Compensation §§ 255-268.

applied in making a determination of whether the injury resulting in death was sufficiently work-related to be compensable, and the appeal board did not err in its determination.

Affirmed.

1. W<small>ORKMEN'S</small> C<small>OMPENSATION</small>—A<small>PPEAL</small> B<small>OARD</small>—F<small>INDINGS OF</small> F<small>ACT</small>— S<small>UPPORT IN</small> R<small>ECORD</small>.

Findings of fact made by the Workmen's Compensation Appeal Board acting within its powers, in the absence of fraud, are conclusive; if there is evidence in the record to support the board's findings of fact, they will not be disturbed on appeal.

2. W<small>ORKMEN'S</small> C<small>OMPENSATION</small>—E<small>MPLOYEE</small> E<small>N</small> R<small>OUTE TO</small> W<small>ORK</small>—C<small>IR-CUMSTANCE OF</small> E<small>MPLOYMENT</small>.

Generally, an employee traveling to or from work is not covered by workmen's compensation; however, compensation may be provided where there is a sufficient nexus between the employment and the injury so that it may be said that the injury was a circumstance of the employment.

3. W<small>ORKMEN'S</small> C<small>OMPENSATION</small>—E<small>MPLOYEE</small> E<small>N</small> R<small>OUTE TO</small> W<small>ORK</small>— W<small>ORK</small>-R<small>ELATEDNESS OF</small> I<small>NJURY</small>—C<small>ONSIDERATIONS</small>.

Considerations relevant to the determination of whether an injury to an employee while on the way to work is sufficiently work-related to be compensable are (1) whether the employer paid for or furnished the employee transportation, (2) whether the injury occurred during or between working hours, (3) whether the employer derived a special benefit from the employee's activities at the time of the injury, and (4) whether the employment subjected the employee to excessive exposure to traffic risks.

4. W<small>ORKMEN'S</small> C<small>OMPENSATION</small>—A<small>PPEAL</small> B<small>OARD</small>—E<small>MPLOYEE</small> E<small>N</small> R<small>OUTE</small> TO W<small>ORK</small>—E<small>VIDENCE</small>.

The Workmen's Compensation Appeal Board did not err in finding that a corporate executive who was killed in an airplane crash while en route to a meeting on behalf of the corporation was killed in the course of his employment, entitling his widow to benefits, where the evidence substantially satisfies some of the considerations on compensability to be applied in the case of an employee who is injured while traveling to work.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Joseph C. Smith),* for plaintiff.

*Lilly, Piatt & Doyle,* for defendants.

Before: Beasley, P.J., and D. E. Holbrook and G. R. Cook,* JJ.

D. E. Holbrook, J. Plaintiff Kay M. Stover seeks worker's compensation benefits for the death of her husband, Arthur W. Stover, who was killed in the crash of a light aircraft on March 31, 1973, near Niles, Michigan.

Mr. Stover owned 90 per cent of the stock of defendant Midwest Tank and served as that company's president. He drew no salary and his presence was not normally required at the company's manufacturing site in Buchanan, Michigan. Stover was usually present the bulk of each week in Owensboro, Kentucky, location of yet another firm which he served as president. He returned to Michigan, where his wife resided and where he had other, additional business interests, on weekends.

Stover used the telephone to keep in contact with the salaried vice-presidents of Midwest Tank during the week. In addition, he frequently met with them in Michigan on weekends. According to the testimony of one of the vice-presidents, Stover contributed valuable financial expertise to the management of Midwest Tank; the two vice-presidents were familiar only with the production and engineering components of Midwest's operation, and valued Stover's contribution to the management of Midwest at approximately $400 per week.

The airplane in which Mr. Stover died was leased in the name of Midwest, which collected the insurance proceeds on it after the crash. The pilot's salary was also paid by Midwest, and his

* Circuit judge, sitting on the Court of Appeals by assignment.

employment contract required that any time not spent piloting or maintaining the airplane be spent at Midwest's direction. The craft was apparently used primarily by Stover to travel between Michigan and Kentucky. During the week, however, it remained in Niles and was used infrequently for Midwest business or by Midwest personnel for personal business. Nevertheless, Stover made the lease payments and covered the maintenance expenses on the aircraft personally.

On the weekend of the crash, Mr. Stover was scheduled to attend a conference in Michigan to finalize arrangements for a loan which would allow Midwest to purchase its leased plant site. One of Midwest's vice-presidents testified that Stover's presence at this meeting was essential and noted that after Stover's death the transaction fell through. The pilot flew to Owensboro to pick up Stover; together they flew to Nashville, Tennessee, returned to Owensboro, then crashed attempting to land in Niles on their return to Michigan.

Mrs. Stover's petition for worker's compensation benefits was denied on April 17, 1975, by the administrative law judge who found that Stover's "fatal accident did not arise out of and in the course of" his employment with Midwest Tank. The Workmen's Compensation Appeal Board reversed this decision on August 15, 1977, and ordered payments of $94 per week for a period not to exceed 500 weeks. Defendants-appellants' application for leave to appeal to this Court was granted on April 26, 1978. Defendants contend that the board erred in its finding that plaintiff's husband was an employee of Midwest Tank and in its holding that Stover's death arose out of and in the course of his employment.

It should be noted at the outset that, under MCL

418.861; MSA 17.237(861): "The findings of fact made by the board acting within its powers, in the absence of fraud, shall be conclusive." If there is evidence in the record to support the board's findings of fact, they will not be disturbed on appeal. *Scroggins v Corning Glass Co,* 382 Mich 628; 172 NW2d 367 (1969). As this Court stated in *Lemanski v Frimberger Co,* 31 Mich App 285, 286-287; 187 NW2d 498 (1971): "Fact findings by the Workmen's Compensation Appeal Board, supported by proof, are binding on this Court." Nevertheless, under *Howard v Detroit,* 377 Mich 102, 105–106; 139 NW2d 677 (1966), it was stated:

"We are not here, however, concerned with evidentiary facts, their weight or their credibility. We are concerned with the ultimate conclusion. This finding is, in reality, a legal conclusion based upon the record by application thereto of legal principles established by precedent opinions of this Court."

In the instant case the evidentiary facts are not in dispute and we must determine if a conclusion of the appeal board on the facts is supportable.

Initially, we must determine then which of the appeal board's conclusions represent findings of fact, binding on this Court on appeal, and which of the board's conclusions represent ultimate decisions of the legal issue at hand, "legal inferences from other facts" as it were, subject to review. The board found that "Mr. Stover was an employee of defendant Midwest" and that he "was in the course of his employment at the time of the plane crash". The board based the latter finding on its determination that "that [fatal] trip was necessitated by the urgency of the scheduled meeting" alluded to above; it also directed attention to the evidence indicating that Stover's airplane was

leased in the defendant's name, and that Stover's presence at this meeting was "vital to defendant's continued existence". Clearly, the board's conclusion that Stover's death arose out of his employment was an ultimate conclusion—a legal inference drawn from other facts. As such, this finding is open to review by our Court.

The board's determination that Stover was employed by the defendant was based primarily upon the following testimony of one of the defendant's vice-presidents, which the board adopted in its opinion:

"Q. *[by plaintiff's attorney]* Well, did he [Stover] do anything more with the business than merely invest dollars in it?

"A. In an advisory capacity.

"Q. * * * What kind of advice did he provide for the company?

"A. Methods that he thought we should follow in the —in the course of the business. He was much more aware of business than I and, I am sure, Mr. Fisher, also. * * *

"Q. He provided some business expertise, then?

"A. I would suppose you could state it that way, yes."

In responding to counsel's suggestion that $400 per week would be a reasonable value for Stover's services, the vice-president replied:

"If he were an active person in the capacity of the president of this corporation, $400 would not be enough. In the capacity that he acted, the things that he told us we could do, the availability of materials through different areas, I think, yes."

This testimony, taken together with evidence showing Stover's participation in the management of defendant's business through regular weekend

conferences and occasional telephone calls, provides strong support for the board's determination that Stover was a "person in the service of [the defendant], under any contract of hire, express or implied".[1] MCL 418.161(b); MSA 17.237(161)(b). This finding is not an "ultimate" conclusion open to review under *Howard, supra;* rather, it is that type of rudimentary finding which is particularly within the province of the appeal board. Since, as noted above, there is evidence to support this finding we are bound by the board's conclusion that Stover was an employee of the defendant.

We must consider, then, whether the board was correct in its ultimate finding that Stover's death arose out of and in the course of his employment under MCL 418.301; MSA 17.237(301). The general rule under these circumstances is that an employee traveling to or from work is not covered by workmen's compensation. *Stark v L E Myers Co,* 58 Mich App 439; 228 NW2d 411 (1975), *lv den* 394 Mich 814 (1975), *Pappas v Sport Services, Inc,* 68 Mich App 423; 243 NW2d 10 (1976), *lv den* 397 Mich 825 (1976). As pointed out in these cases:

"This general rule however has been repeatedly riddled with exceptions to the extent that it seems to have become an exception to the exceptions. From this consequent erosion of the general rule, it would appear that there is arising through evolution a new rule which compensates where 'there is a sufficient nexus between the employment and the injury' so that it may be said that the injury 'was a circumstance of the employment'." (Citations omitted.) *Stark,* at 442–443.

---

[1] The fact that Stover dominated the defendant Midwest Tank as a 90 per cent shareholder did not, in the absence of allegations of fraudulent or improper use of the corporate form, preclude him from contracting with Midwest Tank for purposes of the Worker's Disability Compensation Act. *See, Gottlieb v Arrow Door Co,* 364 Mich 450; 110 NW2d 767 (1961).

In order to establish the nexus referred to, the *Stark* Court extrapolated from previous decisions four

"[c]onsiderations relevant to the ultimate determination of whether an injury to an employee while on the way to work is sufficiently employment-related to be compensable * * * :

"1. Whether employer paid for or furnished employee transportion, * * *

"2. Whether the injury occurred during or between working hours, * * *

"3. Whether the employer derived a special benefit from the employee's activities at the time of the injury, * * *

"4. Whether the employment subjected the employee to excessive exposure to traffic risks." (Citations omitted.) *Stark,* at 443.

Due to Stover's unusual and irregular working hours, we do not rule upon whether or not the injury occurred "during or between working hours", nor do we rule that Stover's employment with Midwest subjected him to excessive travel risks.

The evidence taken in the instant case does indicate, however, that defendant Midwest Tank played a substantial role in furnishing Stover with the subject aircraft. First, Midwest paid the pilot's salary. Further, the evidence that Midwest utilized the craft for corporate purposes; that the craft was leased in Midwest's name; that Stover turned the proceeds given him by a personal friend who borrowed the plane over to Midwest; and that Midwest retained the insurance proceeds from the plane for its own use, all indicates that Midwest and not the decedent owned the aircraft in which Stover was killed.

The appeal board also found that deceased's

presence was required at the "urgent" conference due to take place on the weekend of the crash. Despite the fact that Stover generally did make similar trips for personal reasons, there is evidence to support this determination, rendering it conclusive on appeal. This finding indicates that Midwest would indeed have derived a special benefit from Stover's return to Michigan on that weekend.

Given that the facts of the instant case substantially satisfy two of the relevant considerations set forth in *Stark,* we hold that the appeal board did not err in its determination of the ultimate question before it: Stover's injury did arise out of his employment for purposes of the workmen's compensation act. Therefore, there were no errors of law in the proceeding below and the decision of the Workmen's Compensation Appeals Board was correct.

We have assumed that *Howard, supra,* was not overruled *sub silentio* by subsequent cases such as *Johnson v Vibradamp Corp,* 381 Mich 388; 162 NW2d 139 (1968), which have applied MCL 418.161 to foreclose review of the board's determination of apparently "ultimate" conclusions, based on facts in the record. If we are mistaken as to this assumption, our result is, of course, the same.

Affirmed. Costs to plaintiff.